## Workman v. Workman.

(Decided March 25, 1921.)

### Appeal from Pulaski Circuit Court.

1. Infants—Custody.—A non-resident of this state who is the parent of a child resident herein may maintain an action in the courts of this state for the custody of such infant.

2. Infants—Custody.—There being no statutory inhibition the courts of this state have the power to adjudge the custody of an infant to whomsoever it might appear the welfare and happiness of the infant demand, whether that person be a resident or non-resident of this state.

3. Infants—Custody.—The evidence showing that the mother is an improper person to have charge of an infant daughter, and that there is an immoral atmosphere at the home where the child is being kept, her custody is adjudged to the father, although he be a resident of another state.

W. B. MORROW and W. M. CATRON for appellant.

JAMES L. COLYER and JAMES DENTON for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

Appellant and appellee were married in 1911 in Cincinnati, O., and lived there together for several months, when appellee left her home at Cincinnati and returned to her former home at Somerset, Kentucky, where she has since resided.

In April, 1912, a daughter was born to them, and that child has always lived at or near Somerset, Kentucky, being at all times in the custody of its mother but principally cared for either by her mother or his mother, both of whom lived at or near Somerset.

In 1918 appellant, still a resident of the state of Ohio, brought this action in the Pulaski circuit court for divorce and the custody of the infant, alleging as grounds for divorce abandonment and lewd and lascivious conduct upon the part of the defendant; and alleging as ground for the custody of the child that the defendant had lived and was living such a life that she was an unfit person to have the care and custody of the infant daughter.

These allegations were put in issue by the answer, and it was further made to appear that the plaintiff was an actual resident of the state of Ohio.

The court entered a judgment dismissing the plaintiff's action in so far as it sought a divorce, upon the ground that the plaintiff being a non-resident of the state, could not maintain the action under our statute, but retained the case on its docket for the purpose of disposing of the custody of the infant, and upon final judgment adjudged such custody to the defendant, and from that judgment this appeal is prosecuted.

That the action of the lower court in dismissing the suit for divorce was proper was held in the very recent case of George v. George, 190 Ky. 706, where the precise question was involved. But the court also held in that case that while the non-resident plaintiff could not maintain an action in this state for divorce, the case in so far as it sought alimony should have been retained upon the docket for a determination of that issue, and whether in this case the court properly retained the case upon the docket for the purpose of disposing of the custody of the infant is a question which is raised in this case by a motion to dismiss the appeal.

The ground of the motion to dismiss is that the courts of this state will not adjudge the custody of an infant to a non-resident of the state so as to permit the infant to be taken out of the jurisdiction of the court.

So the two questions on this branch of the case seem to be: (1) May a non-resident plaintiff who is the parent of a child resident in this state maintain an action in the courts of this state for the custody of such infant upon a showing that its present custodian is an unfit person morally and that the present surroundings of the infant are such that it will be reared in an impure atmosphere? (2) Will a chancellor in this state upon a proper showing award the custody of an infant resident in this state to a non-resident parent?

(1)   It is the declared policy in this state by statutory enactment (Ky. Stats., sec. 2123) that in all cases involving the care and custody of infants the courts shall have in mind principally "the interest and welfare of the child;" and it has long been, independent of this statute, the rule in all jurisdictions in such matters to regard the welfare and future happiness of the infant as the paramount consideration to which all other considerations must yield. Having in mind this statutory policy and this wise rule, long adopted and universally recognized, it would be abhorrent, in the extreme, to say, in the absence of statutory provision, that the courts of this state would deny to a non-resident parent the privilege of asserting his right to the custody of his infant child in this state upon a showing that the infant was in improper hands and being reared in an impure atmosphere.

From these considerations it follows that such non-resident plaintiff may maintain in this state an action for the custody of his infant child resident herein, although he may not at the time be a resident of this state so as to maintain therein an action for divorce.

(2)   On the second proposition there is little difficulty as this court has in a recent case passed upon the question.

In the case of Rallihan v. Motschmann, 179 Ky. 180, the same question arose in this way: Motschmann and his wife were each residents of Louisville, where they were married and where they lived for several years after their marriage. They became estranged, however, and he left the state and finally instituted an action for divorce in the state of Rhode Island, in which proceeding the custody of their infant daughter was awarded to the mother. The mother thereafter died, and Motschmann having remarried, demanded the custody of the infant from its maternal grandparents, who lived in Louisville.

The lower court awarded the custody to the father, although it involved taking the child outside of this state, and from that judgment the grandparents appealed, and among others the question was raised which is here made, and the court in response said:

"The argument that the awarding of the custody of the child to its father would be, in effect, a court of equity permitting a child to be taken out of its jurisdiction and that such should not be done, is without any foundation in any good reason. It is true, a court of equity has power to restrain the improper removal of a child from the state, even by a parent, but a case which would justify interference of that kind with the natural and legal rights of the parent would have to be a very extreme one indeed. 14 R. C. L. 273."

The court in that case referred to the case of Adams v. Adams, 1 Duvall 168, where this court approved of giving the custody of an infant to its mother who resided in the state of Ohio, saying:

"The residence of the mother in Ohio presents no formidable objection to the order. For the welfare of the infant, the court might have changed the domicile; and certainly, therefore, it could certify a change long before made with its sanction and so continued *pendente lite*."

No consideration short of a statutory inhibition will interfere with the power of a chancellor to adjudge the custody of an infant to whomsoever it might appear the welfare and happiness of the infant demand, whether that person be a resident or non-resident of this state.

For the reasons given the motion to dismiss the appeal is overruled.

There yet remains for us to determine whether the judgment of the lower court as to the custody of the infant was proper.

That the appellee is a hopelessly bad woman and therefore an improper person to be entrusted with the delicate duty of rearing and training a little girl, is apparent from the whole evidence; without going into detail it is sufficient to say that her illicit relations with at least one man since her separation from her husband is clearly shown, to say nothing of the fact that during that separation she has become the mother of an illegitimate infant, and although she told her mother that this was an infant which she had adopted, it is fairly well shown by the evidence that it was her own.

Not only does the evidence show the appellee to be an improper person for such custody, but it shows in addition that she has turned over the infant to her mother, who lives near Somerset, and that in her mother's home there is an idiot boy some eight or ten years older than this infant daughter in question, and that the child is being reared in constant companionship with this idiot, and that the idiot being totally irresponsible, exposes his person in the presence of the little girl. In addition to this it is shown that in the home of appellee's mother there is another daughter who is unmarried but has an illegitimate child, and that men visit that daughter in that home and that improper conduct is carried on by that daughter in the presence of the child.

As to appellant it is shown that he is a hard working man who makes about $60 a month, and that while he is not wholly free from the frailties of mankind, he is devoted to his child and anxious to have it properly reared and educated, and is able to do so, considering his station in life. Not only so, but it appears that his mother lives at Somerset, and that she and her husband, the stepfather of appellant, are very much devoted to the child, and have a good home near a good school in that town.

With an eye single to the welfare of this infant, it can not be doubted that it is our duty to award the custody to the father, even though it involves the removal of the infant from the state of Kentucky, which apparently will not necessarily result.

The judgment is reversed, with directions to enter a judgment awarding the custody of the child to appellant, with such additional orders as will secure to the appellee the privilege of visiting the child at such times as may be deemed proper.