**Barbara Jeane MIRACLE, Plaintiff in Error,**

v.

**H. G. MIRACLE, Defendant in Error.**

**No. 40430.**

Supreme Court of Oklahoma.

Nov. 12, 1963.

Rehearing Denied Dec. 20, 1963.

Charles Dunn, Tulsa, for plaintiff in error.

O. C. Lassiter and A. Langley Coffey, Tulsa, for defendant in error.

BERRY, Justice.

This is the second appeal by the same parties growing out of a divorce proceedings. For our former opinion, see Miracle v. Miracle, Okl., 360 P.2d 712.

In that opinion we placed custody of the daughter, Jan, then 7 years of age, in the plaintiff, herein referred to as mother, from September 15 of each year until the following June 15 of the succeeding year. The balance of each year custody was placed in the defendant, herein referred to as father.

Pursuant to the mandate in the first appeal, the mother returned Jan to the father for the summer months of 1962. On July 27, 1962, the father filed a motion to modify the trial court's prior order entered in conformity with the mandate issued by this Court in the last appeal. The motion to modify was predicated upon a subsequent change in conditions.

The trial was heard on this matter September 18, 1962, and the court modified the previous order, placing custody of Jan for 9 months (Sept. 1 to June 1) in father and three months (June 1 to September 1) in mother, so long as the mother was a resident of Asmara, Ethiopia; also finding that "it is for the best interest of the minor child that she be with defendant (father) as long as plaintiff (mother) is a resident of and is keeping said child with her in Asmara, Ethiopia."

The mother has appealed from an order overruling her motion for a new trial directed to this modification order. She argues "That the judgment and order of the trial court is contrary to the uncontroverted evidence submitted in this case and is contrary to the law of the State of Oklahoma."

In her brief plaintiff takes the position that trial court's order under review was predicated solely on the fact of her family's change of residence from Rome, Italy, to Asmara, Ethiopia. We agree, but also feel the trial judge, as reflected by his comments, inferred that to return Jan in compliance with the previous order was compelling her to live in Asmara against her will and preference.

In Young v. Young, Okl., 383 P.2d 211, we held:

"In awarding the custody of a minor, the court should give paramount consideration to what appears to be for the best interest of the child in respect to its temporal, mental and moral welfare.

"In a proceeding to modify provisions of an order relating to custody of child, *burden of proof is upon applicant to show a substantial change in conditions since entry of order sought to be modified which bear directly upon the welfare and best interest of child* or show that material facts bearing upon welfare and best interest of child were unknown to court at time order sought to be modified was entered." (emphasis ours)

We shall examine trial court's findings in the light of the applicable rules.

The mother submits, substantially, under her proposition that the trial court erred when it (1) relied upon its own independent research, outside the record, to find Asmara, Ethiopia, an unsuitable place for Jan to live; (2) that the court disregarded the uncontradicted testimony, as reflected by the evidence, concerning Jan's immediate surroundings to which she would be exposed in her mother's custody while in Ethiopia; (3) that the court placed undue and incorrect emphasis upon Jan's testimony as to conditions in Asmara and as to Jan's preference; and (4) that the court's disposition was inconsistent with its finding because Jan was, under the order, placed in custody of the mother for three months of each year.

We shall consider these contentions collectively and without regard to the above se-

quence, and only in so far as they appear relevant.

In the mother's deposition, as it appears in the record, concerning her residence and the surroundings in which, if she had custody, Jan would live, it is stated:

"A.7. Our house in Asmara is called 'Villa Roma' and was formerly the residence of the English Governor General. The living area consists of three sitting rooms, a ballroom, dining room and two baths downstairs. Upstairs we have four bedrooms; a sitting room and two baths. The children's room is the largest, and the most attractive because it has French doors opening onto a spacious terrace where they can ride bicycles and roller skate.

"The house is surrounded by a lovely garden with many trees and flowers. In an area in back the children have their swing set and plastic swimming pool and in the largest tree we have built a tree house. Having a large garden has also made it possible to have pets and we have a dog, lamb, an enormous turtle and we soon will have a horse.

"Asmara is an attractive and clean city with broad, tree-lined streets, modern shopping center and lovely residential areas. The foreign community totals about 16,000 of which approximately 2,000 are Americans. At an altitude of 7,700 feet Asmara has a temperate climate which can be matched by few other places in the world. Daytime temperatures average in the 60's during the rainy season (July to mid-September) and winter months (December, January and part of February), while during the rest of the year they run from the 70's to the 80's. The lack of humidity makes even temperatures in the 80's comfortable. "Asmara has a wide selection of schools, and aside from the American school which Jan attends, there are public and private schools taught in English, French and Italian. There

are also Protestant, Catholic and Jewish churches, and Jan goes to a Protestant Sunday School."

This evidence is unrefuted. We will not consider the propriety of the trial judge's independent research or the admissibility of the evidence offered by the father to show general conditions in Ethiopia. We consider, in the face of the record, that there is no evidence of probative value to establish that the change of location from Rome to Asmara constituted such a change of condition as to effect a material alteration bearing upon the welfare of Jan.

The mother's evidence is uncontradicted in showing that the family's removal from Rome to Asmara was, if anything, a change for the better in so far as the best interests and welfare of Jan. Undoubtedly the mother's present husband had been advanced in his career and his choice of a post in Asmara cannot be construed, in the light of the record, to be detrimental to the best interest of himself, his wife, his own two children or to his step-daughter, Jan.

The burden of proof was upon the father to show that there was a change of condition since the previous order that bears directly on the welfare of the child. His evidence, other than to show general conditions in Ethiopia, consists of a discernment in personality changes in Jan's behavior after her return from her mother; that Jan liked to dress herself in her step-mother's clothes and pose before a mirror; that Jan ate abnormally when she first returned; that she was a pound lighter and an inch taller than when she had been with him before, and soon thereafter gained ten pounds; that the mother had a fetish about obesity; that when Jan arrived she was afflicted with two boils; that Jan did not want to return to her mother; that she considered California her home; that Jan's step-mother loved her very much and wanted her to remain in his custody; that while in Ethiopia Jan ate meals with her little sister and a nurse except for weekends.

There is no evidence to show that Jan's behavior in any respect was abnormal or

that when she arrived at her father's home she was not in excellent health except for the boils. The father's evidence does not support a conclusion that Jan was underfed or under-nourished while with her mother. The fact that she arrived with two boils proves no more than that.

Jan's testimony in regard to malaria medications is not such as to refute the mother's testimony, or the medical experts, and/or the healthful climate in general surrounding her immediate locale in Asmara.

As to Jan's not dining with her mother and step-father during the week, we are left to speculate as to whether this is a factor injurious to her moral well-being. This element was undoubtedly before the court prior to the last order, and if not, the duty was upon applicant (father) to show that this was detrimental and unknown at the prior hearing. The record fails to so indicate.

Jan's testimony shows love for her mother, step-father, little sisters and her nurse; and also love for her father and step-mother. Her testimony shows that she liked school, had friends and playmates and liked her home in Asmara; and also shows that she liked school, had friends and playmates and liked her home in California. Jan's testimony shows a preference for California. She did use the word "dirty" to describe certain places in her home in Asmara and in reference to Asmara. In reviewing this testimony of a girl of tender years and the evidence describing, along with pictures, her immediate surroundings, including her home, schools, shopping center and playgrounds in Asmara and the many servants employed in that household, we are not impressed by its probative force.

We are impressed with her preference to stay at her home in California. This, however, is not controlling and when considered how little she has been with her mother due to court litigation in the past several years, it is apparent why she considers California her home. We are also impres-

sed by the evidence of the mother that Jan did not wish to return to her father in June of 1962.

Both the briefs of the mother and the father cite cases generally to the effect that the best interest of a child in custody disputes is of paramount interest to the courts, to which this Court has long been committed.

The father cites Adams v. Adams, 294 P.2d 831, Okl., and other similar cases and contends that where there is a material issue of fact, the appellate court will not disturb the finding of the trial court. The father has placed incorrect construction on the above cited case which holds:

"The action of the trial court in refusing to modify a child custody order or judgment will not be disturbed on appeal unless so clearly against the weight of the evidence as to constitute an abuse of discretion."

The case does indicate that when questions of fact are in controversy this Court may properly leave that determination to the trial court unless, of course, it is not in the best interest of the child or against the clear weight of the evidence. We have examined the father's brief for citations and do not find them in conflict with our holding herein.

We have carefully examined the record and find that the judgment of the trial court is against the clear weight of the evidence and that the trial court has abused its discretion. The cause is therefore reversed and remanded with instructions to the trial court to vacate its last order, reinstate the prior order, modifying it only to the extent that the mother retain custody until June 1, 1965, and thereafter the prior order to be in force and effect.

Reversed and remanded with directions.

BLACKBIRD, C. J., and HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON and IRWIN, JJ., concur.