### In re TWO MINOR CHILDREN.

Court of Chancery of Delaware,
New Castle.

Oct. 29, 1971.

Clement C. Wood, of Allmond & Wood, Wilmington, for natural grandparents.

Daniel L. Twer, of Morris, James, Hitchens & Williams, Wilmington, and Robert Heath, Houston, Tex., for natural father.

DUFFY, Chancellor:

This issue for determination is the appointment of a guardian over the person and property of two young girls, ages 8 and 5. This is the decision after final hearing in which the contestants are the father of the children and their maternal grandparents.

## A.

The parents of the children separated in June 1970. On October 23, 1970 the mother received a *decree nisi* in a divorce action against the father. The children were in their mother's custody from the separation until June 20, 1971 when she died in an automobile accident.

The children have resided with their maternal grandparents since their mother's death. And they were in the grandparents' home five days each week, while their mother was working, for about three years prior to her death. The grandparents are in their early fifties and in reasonably good health. The grandfather has been employed by the same company for twenty-five years; he is a shift work supervisor and earns sufficient income (about $1,200 a month) to support the children comfortably. The children have their own room and attend school in the immediate neighborhood. In appearance they reflect the ethnic origin of their father, but that does not present any social or cultural problem for them in school or in the neighborhood.

The father made no effort to contact or support his children after October 1970. His address was unknown to the grandparents in August when they filed the petition in this case. On December 13, 1970 the Family Court ordered him to pay the sum of $30.25 per week for support of the two girls, but he has never complied with any part of the order.

On November 2, 1970 the father went through a marriage ceremony with A in the State of Maryland (after stating in the application for license that he had never married). He was, of course, still married to the mother of the children since the di-

vorce decree could not become final before January 23, 1971. He left A on December 27, 1970 and went to Texas. On January 9, 1971 he went through another ceremony, this time with B. During the so-called waiting period he thus went through two ceremonial marriages.

The father's employment record has been equally erratic. He has worked in California, Ohio, Delaware, and Texas (twice). And he has changed jobs approximately every two years. At the time of trial he had been employed for about four or five months as maintenance manager for 250 apartment units for which he was supplied with a 4-bedroom apartment and paid $500 a month. He received an undesirable discharge from the Navy, and he was once charged with being an accomplice to a car theft.

The grandparents filed a petition seeking appointment as guardian of both person and property. After notice the father came to Delaware from Texas and filed a cross-petition for the same purpose.

### B.

▬ Preliminarily, I should note that the reported Delaware decisions which I regard as authoritative are custody cases. There is a jurisdictional as well as a substantive difference between custody and guardianship but, for present purposes, the underlying principles are the same since the welfare of the children is the paramount concern of the Court in each kind of case.[1]

▬ In an application for guardianship of the person of a minor, as in a petition for custody, the determinative question is this: "what is in the best interests of the child?" In re One Minor Child, Del. Supr., 254 A.2d 443 (1969); In re Two Minor Children, Del.Supr., 3 Storey 565, 173 A.2d 876 (1961); 63 A.L.R. 1147. The custody cases are many, including litigation between father and grandparent, and the courts have used different language to describe the test and to formulate a rationale. See the extensive annotations in 31 A.L.R.3d 1187 and 25 A.L.R.3d 7. The Delaware cases, however, have followed the "best interest" approach and I am bound by it. In applying that test the legitimate interest of a person claiming guardianship may not be ignored, but that interest is not controlling, duPont v. duPont, Del.Supr., 216 A.2d 674 (1966); it is weighed, of course, but the welfare of the child is both the objective of and the criterion applied by the Court.

▬ It has long been recognized that a father is the natural guardian of his children, 1 Sharswood's Blackstone's Commentaries 461 (1895), and that maxim is codified in 13 Del.C. § 701.[2] But it does not give a parent an absolute right over grandparents for guardianship of a child. In-

---

1. The Family Court has subject matter jurisdiction of custody cases, 10 Del.C. § 952. And so does the Superior Court. This Court appoints a guardian of both person and property of a minor. 12 Del.C. § 3903; 57 Del.L., Ch. 402. Speaking generally, custody involves immediate care and control, while a guardianship indicates not only those responsibilities but those of a parent (*loco parentis*) as well.

2. 13 Del.C. § 701 provides:
"The father and mother shall be the joint natural guardians of their minor child and, * * * shall equally be charged with its care, nurture, welfare and education. * * * they shall have equal powers and duties with respect to their minor child, and neither parent shall have any right superior to the right of the other parent concerning the child's custody * * *. If either father or mother dies, * * * then, the guardianship of such child devolves upon the other parent. * * * The provisions of this section shall not affect the laws of this State relative to the appointment of a guardian of the property of a minor, or the appointment of a third person as guardian of the person of the minor where the parents are unsuitable or where the child's interests would be adversely affected by remaining under the natural guardianship of its parents or parent."

deed, this Court is not bound by any unqualified legal right of the parent. Ex parte Marti, Del.Super., 7 Terry 313, 83 A. 2d 688 (1951); Ex parte Maris, Del. Super., 7 Pennewill 242, 63 A. 197 (1906); 67 C.J.S. Parent and Child § 11a(1); 39 C.J.S. Guardian and Ward § 18b.

The statute "devolves" sole guardianship of a child upon the surviving parent. But, as I have indicated, neither the statute nor the law generally make the devolution absolute or unqualified. Indeed, § 701 specifically authorizes appointment of a third person as guardian when the "parents are unsuitable or where the child's interests would be adversely affected by remaining under the natural guardianship of its parents or parent." In short, there is a rebuttable presumption that the natural parent should be appointed guardian. Foster and Freed, Child Custody, 39 N.Y.U.L.Rev. 423, 426 (1964). And one opposing a natural parent has the burden of overcoming the presumption. In this case the burden is on the grandparents to rebut the presumption given the father and to prove by a preponderance of the evidence that it is in the best interests of the children to award guardianship to them. In re One Minor Child, Del.Supr., 254 A. 2d 443 (1969).

I find as a fact that the grandparents have met this burden by proof of the financial, marital and employment instability of the father, coupled with his failure to provide any support for his children or to communicate with them in any way from October 1970 until he was given notice of this proceeding in August 1971. By contrast, the children are settled in the home in which they have lived since the death of their mother and in which they have spent much time during the past four years. They are personally and financially stable and secure; their welfare is provided for with little uncertainty. Compare In re One Minor Child, supra; Nelson v. Murray, Del.Supr., 211 A.2d 842 (1965). I cannot find that it is in their best interest to uproot them, to remove them from that environment and to send them off to live with their father and his present wife (if such she is under Texas law). The disinterest which their father manifested in them and, indeed, in their minimum needs for survival, his erratic employment record and his general instability all persuade me that it would not be in the best interest of the children to put them, at this time, in their father's domestic arrangement.

## C.

While I have decided that the father's petition must be denied and that of the maternal grandparents should be granted, it does not follow that the father is barred from guardianship for all time. On the contrary, I am satisfied that he should be given an opportunity to show that it will be in the best interest of the children to appoint him as guardian. The girls are young, they should know their father and the law generally encourages the strengthening of the natural relationship between parent and child. Accordingly, an order will be entered granting the petition of the grandparents and denying that of the natural father, but with leave to him to apply for further hearing at any time when there is a substantial change in the facts and, in any event, at any time after May 1, 1972. At any such hearing the Court will welcome evidence as to his support of the children, his visits and/or communications with them, his marital status, his employment, and such other material facts as the parties decide to offer.

3. **Criminal Law** ⚷═1044