ANTHONY PRESUTTI *v.* ELENA PRESUTTI

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued April 9—decision released August 5, 1980

*James A. Plessinger,* with whom, on the brief, was *Denis R. Caron,* for the appellant (plaintiff).

*Maxwell Heiman,* with whom, on the brief, were *S. Robert Verrillo* and *William J. Tracy, Jr.,* for the appellee (defendant).

ARTHUR H. HEALEY, J.   This is an appeal from a dissolution decree, rendered by a state referee, in which the defendant mother was given custody of the only child of the marriage, Lena Anne,[1] and the plaintiff father was given the right of reasonable visitation.  The practical effect of the custody order was to permit the child to reside in Italy with the defendant.  Although other orders were rendered,[2] the appeal by the plaintiff concerns only the trial court's decision on custody and visitation and its order requiring the plaintiff to pay the defendant's counsel fees and cost of preparing the transcript.

The memorandum of decision, read in the light of other undisputed evidence, discloses the following facts:   The plaintiff and the defendant were married in Italy on October 3, 1970.  Prior to the marriage, the plaintiff, who had been previously married and divorced, had lived in the United States

---

[1] The child, Lena Anne, was born on August 11, 1974, in Connecticut.

[2] The trial court ordered the defendant to convey her one-half interest in the family home in West Hartford to the plaintiff and, simultaneously therewith, the plaintiff was ordered to pay the defendant $13,450 to be secured by a second mortgage on those premises, payable in eighty-four equal monthly installments at the rate of 6 percent per annum.

for twenty years, and the defendant had been a life-long resident of Italy. After the marriage, the plaintiff returned to Connecticut and the defendant came here several weeks later. The parties resided in a single family residence in West Hartford. The plaintiff was employed at Royal Business Machines, Inc., prior to and during the marriage and the defendant also obtained employment there after the marriage. The defendant stopped working when she gave birth to her daughter in August, 1974. She did not work outside the home after the child was born. The defendant, who was and is unable to speak or understand English, lived an isolated life in this country. The plaintiff surrounded her with only his friends and family members, who lived a short distance from the parties' home. On March 31, 1977, the defendant, without notice to the plaintiff, left the jointly owned home and flew back to Italy with Lena Anne. The referee made the following unusual, but well-substantiated, finding: "Based on the actions of the plaintiff during the hearings, I can understand why the defendant took the child and went back to live with her folks in Italy." In November, 1977, the plaintiff instituted this divorce proceeding seeking a dissolution of the marriage on the ground of irretrievable breakdown, custody of the minor child, an assignment of the defendant's estate pursuant to statute and the return of personal property.[3] The defendant filed a cross complaint seeking a dissolution on the same ground, custody of and support for the minor child, alimony, a conveyance of the plaintiff's one-half interest in the family home and any other appropriate equitable relief. The defendant returned to

___

[3] The plaintiff claimed that when the defendant left she took the sum of $4000 from a bank account owned jointly with the plaintiff.

this country in August, 1978, to be present for the dissolution proceedings,[4] leaving Lena Anne at her parents' home in Italy.

On appeal, the plaintiff's claims of error are directed to essentially two matters: the court's award of custody of Lena Anne and attorney's fees to the defendant.

## I

At the outset, the plaintiff claims that a procedural irregularity in the trial court's consideration of the issue of custody was prejudicial to his rights and disserved the best interests of the child, Lena Anne. At the first hearing held in this case the trial court expressed its erroneous opinion that, since the child was outside of this state at the time of the hearing, it had no jurisdiction to determine the issue of custody. At a later hearing the court corrected its earlier ruling and, on the basis of *Scott* v. *Furrow,* 141 Conn. 113, 118, 104 A.2d 224 (1954), and *Krasnow* v. *Krasnow,* 140 Conn. 254, 259, 99 A.2d 104 (1953), determined the issue of custody. Although the plaintiff claims that this later reversal was prejudicial to himself, he concededly failed to bring to the court's attention its misapprehension of the law at the earlier hearing

---

[4] The case was tried over several days with hearings being held on August 17, 1978, August 21, 1978, September 20, 1978, and December 29, 1978. The trial court filed its memorandum of decision on January 18, 1979, and modified it on January 22, 1979, so as to provide the plaintiff with the right of reasonable visitation. The plaintiff appealed from the original judgment and the modification on February 7, 1979. Thereafter, on March 26, 1979, a hearing was held on the defendant's motion for attorney's fees, at which both parties filed financial affidavits, and on April 5, 1979, the plaintiff amended his appeal and preliminary statement of issues to include the court's subsequent order requiring him to pay the defendant's attorney's fees and disbursements.

by way of objection, took no exception to the ruling, and, when later informed that the matter would be considered by the court, he made no motion for a continuance. Both parties proceeded without objection to a full and fair hearing on the matter.[5] Moreover, the plaintiff failed to include this claim in his preliminary statement of issues, as required by our rules of practice. See Practice Book, 1978, § 3012 (a). Under the circumstances, this claim is not properly before us and will not be considered.[6] Practice Book, 1978, § 3063.

The plaintiff makes several arguments to support his claim that the court erred in awarding custody of Lena Anne to the defendant. Because the defendant is not a resident of the United States and, apparently, does not intend to become one, the question raised is one of first impression in this jurisdiction. At the outset of our consideration of the arguments made by the plaintiff, we point out that, as the plaintiff concedes, in a dissolution proceeding the trial court's decision on the matter of custody is committed to the exercise of its sound discretion and its decision cannot be overridden unless an abuse of that discretion is clear. See *Ridgeway* v. *Ridgeway*, 180 Conn. 533, 541, 429 A.2d 801 (1980); *Simons* v. *Simons*, 172 Conn. 341, 348, 374 A.2d 1040 (1977). The controlling principle in a determination respecting custody is that the court shall be guided by the best interests of the child. General Statutes § 46b-56 (b); *Spicer* v. *Spicer*, 173 Conn. 161, 162, 377 A.2d

---

[5] At the close of the final hearing, the plaintiff's own attorney stated: "[A]s far as I'm concerned this has been a very fair and just trial."

[6] There is no merit to the plaintiff's claim that the best interests of the child were disserved in any way by the events that took place.

259 (1977); *Simons* v. *Simons,* supra, 347. In determining what is in the best interests of the child, the court is vested with a broad discretion. *Ridgeway* v. *Ridgeway,* supra; *Kearney* v. *State,* 174 Conn. 244, 252, 386 A.2d 223 (1978); *Palmieri* v. *Palmieri,* 171 Conn. 289, 290, 370 A.2d 926 (1976). " '[T]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference.' " *Kearney* v. *State,* supra, 252, quoting *Morrill* v. *Morrill,* 83 Conn. 479, 491, 77 A. 1 (1910). Upon this background of judicial review, we consider the plaintiff's claims.

We address first the plaintiff's assertion that it is to be presumed that the child's best interests will be promoted by her remaining in this country and that the burden of proving otherwise rests upon the nonresident parent seeking custody. The plaintiff claims that the court failed to place this burden upon the defendant and that, in any event, the defendant failed to sustain her burden of proof on this issue. Although the plaintiff cites some authority for the proposition that he urges us to adopt; see annot., 15 A.L.R.2d 432, 463 § 9 and cases there cited; we are not persuaded that this is a proper approach to custody matters. See *Morrill* v. *Morrill,* 83 Conn. 479, 489, 77 A. 1 (1910). In *Simons* v. *Simons,* supra, 350, we declined to adopt the defendant's assertion that there was a presumption favoring the mother as a custodial parent as

well as a presumption against modification of a custody order. We there said that any such factors "are merely elements in the larger question of what is in the best interests of the child. If the child's best interests require for him to have a change in custody, it must be made; if they require for him to be placed in the custody of the father rather than the mother, that too must follow." Ibid. Neither the applicable statutes nor the case law on the subject recognize any presumption in custody matters that the party against whom it operates must bear the burden of rebutting. The fact that the defendant mother of the child is a nonresident of this country is one factor, and an important one, to be considered in deciding whether it is in the best interests of the child for the court to award custody to the mother. See, e.g., *Edwards* v. *Edwards,* 191 Or. 275, 227 P.2d 975 (1951).

In support of his argument that the court abused its discretion in awarding custody of Lena Anne to the defendant, the plaintiff points to three major consequences of the court's decision: (1) the court loses effective control over the child; (2) the child is effectively expatriated and loses the right to be raised as an American; and (3) the plaintiff's right to reasonable visitation is rendered illusory. We consider each of these claims to determine whether, if valid, they individually or collectively rise to the level of requiring this court to find an abuse of discretion.

While it is true that, as a practical matter, the court's exercise of its continuing jurisdiction over the education, care, custody and visitation of a child under General Statutes § 46b-56 is made more difficult where the custodial parent resides outside of

the country, it would be inaccurate to say that in such cases the court loses all control over the child. In a context applicable in principle here, we have said that the mere lack of power to enforce a judgment extraterritorially does not deprive a court having the parties before it of jurisdiction to render a judgment that may be enforced on grounds of comity in any other jurisdiction. *Frick* v. *Hartford Life Ins. Co.,* 98 Conn. 251, 259, 119 A. 229 (1922), citing *Morrill* v. *Morrill,* 83 Conn. 479, 487–88, 492, 77 A. 1 (1910); *White* v. *Greene,* 96 Conn. 265, 271, 114 A. 112 (1921); see generally *Adamsen* v. *Adamsen,* 151 Conn. 172, 176–77, 195 A.2d 418 (1963). There is no indication that the Italian courts would not enforce the court's order or a subsequent order relating to the child under the international doctrine of comity. See 45 Am. Jur. 2d, International Law § 7. Both the father and the child are American citizens. It is a well-recognized principle of international law that "[a] state has jurisdiction to prescribe a rule of law . . . attaching legal consequences to conduct of a national of the state wherever the conduct occurs . . . ." Restatement (Second), Foreign Relations Law of the United States § 30 (1) (a). It is also recognized by other nations, including Italy, that an individual's private rights should be determined not by his physical location but by his political allegiance. 1 Rabel, The Conflict of Laws: A Comparative Study, pp. 112–13.

In an analogous case, in which the mother was awarded custody of two children by a Connecticut court and later moved to Holland with the children and her second husband, we said: "It is . . . the law of this state that '[a] divorce decree which awards the custody of a child to one parent with permission to the other to visit the child at reason-

able times and places but which does not expressly restrict the residence of the child, does not impliedly prohibit the removal of the child from the state.' *Raymond* v. *Raymond,* 165 Conn. 735, 740, 345 A.2d 48 (1974)." *Bozzi* v. *Bozzi,* 177 Conn. 232, 413 A.2d 834 (1979). While it is true that the question of whether a custodial parent may remove the child from this country is not the same as the question of whether the court may properly award custody of the child to a nonresident parent, for purposes of the practical enforceability of orders of the court, the considerations involved are the same. Short of a statutory prohibition,[7] the power of the court, as distinguished from the propriety of its exercise of that power, to award the custody of a child to a nonresident and to permit the nonresident to remove the child from the jurisdiction of the awarding court is beyond question. See annot., 15 A.L.R.2d 434, 435–38 and cases there cited. This includes removal to another state in the United States; see, e.g., *Raymond* v. *Raymond,* supra, 740 and cases there cited; and removal to a foreign country. See, e.g., *Bolenbaugh* v. *Bolenbaugh,* 237 N.W.2d 12 (S.D. 1975) (Scotland); *In re Erich,* 310 A.2d 910 (Del. Ch. 1973) (Austria); *Miracle* v. *Miracle,* 360 P.2d 712 (Okla. 1961) (Italy); *Donnally* v. *Blankenstein,* 167 Cal. App. 2d 282, 334 P.2d 260 (1959) (Canada); *Edwards* v. *Edwards,* 191 Or. 275, 227 P.2d 975 (1951) (Australia). We do not believe that the difficulty of enforcing the present order or subsequent orders that may be made concerning the child is a sufficient ground upon which to conclude that the court abused its discretion in the award of custody where

---

[7] See, e.g., *Workman* v. *Workman,* 191 Ky. 124, 229 S.W. 379 (1921).

the best interests of the child are otherwise promoted by the award. See *Morrill* v. *Morrill*, supra, 486–89.

The major thrust of the plaintiff's claim is that, as a probable consequence of the custody award, the child will lose her American citizenship and be deprived of an upbringing as an American. This issue is the most troublesome aspect of this already difficult case. The child, Lena Anne, having been born in the United States, is an American citizen. 8 U.S.C. § 1401 (a). While the custody award in and of itself certainly does not expatriate Lena Anne, it is true that she could lose her American citizenship if her mother files an application for Italian citizenship on behalf of Lena Anne and the child does not return to the United States to establish permanent residence prior to her twenty-fifth birthday. 8 U.S.C. § 1481 (a) (1).[8] Because the defendant has expressed her intention of remaining permanently in Italy, we assume, for the purpose of evaluating the plaintiff's claim, that the court's custody order will have the effect of depriving the child of the opportunity of being raised in America and may result in the child deciding to relinquish her American citizenship. It should be kept in mind, however, that the award of custody to the mother does not *necessarily* mean that the child will, in fact, either relinquish her American citizenship or be raised exclusively in Italy. The limited question presented then, is whether, in light of the fact that the child may relinquish her American citizen-

---

[8] Under 8 U.S.C. § 1481 the child could also lose her citizenship in other ways, including a declaration of allegiance to a foreign state or a formal renunciation before a United States diplomatic council or official in a foreign state.

ship and will probably be raised in Italy as an Italian, the court abused its discretion in awarding custody to the child's mother.

American citizenship is a treasure of inestimable worth. The United States Supreme Court has said of American citizenship: "It would be difficult to exaggerate its value and importance." *Schneiderman* v. *United States,* 320 U.S. 118, 122, 63 S. Ct. 1333, 87 L. Ed. 1796 (1942). Without demeaning the liberty and opportunity that exist in some other countries, we cannot but recognize that the quality of life in this country is uncommonly elevated and that the degree of personal liberty enjoyed here is almost unparalleled in other nations. American citizenship and the accompanying experience of being raised in this country should be a prominent factor in a court's decision to award custody of an American child to a parent who has decided to become a resident of a foreign land. The opportunity to be raised in this country is a factor entitled to substantial weight in the court's assessment of the best interests of the child. The "overwhelming weight of authority," however, is to the effect that a nonresident, or one who intends to become a nonresident, will not be deprived of the right to the custody of a child for that reason alone. See annot., 15 A.L.R.2d 432, 439 § 5; see, e.g., *Miracle* v. *Miracle,* 360 P.2d 712 (Okla. 1961) (custodial mother moving to Italy);[9] *Byers* v. *Byers,* 370 S.W.2d 193 (Ky. 1963) (custodial mother moving to South Africa); *In re Erich,* 310 A.2d 910 (Del. Ch. 1973) (custodial relative resident of Austria). Instead, "[i]t is universally recognized by all courts that in fixing of the custody of a child

---

[9] See also the later case, *Miracle* v. *Miracle,* 388 P.2d 9 (Okla. 1963) (custodial mother moving from Italy to Ethiopia).

considerations of the welfare and interests of the child outweigh *all other considerations;* and in choosing between a resident and a nonresident applicant, the court's primary concern is the well-being of the child and its physical, mental, and moral development in an environment most adapted to and promotive of its full growth." (Emphasis added.) Annot., 15 A.L.R.2d 432, 435 § 3. We subscribe to this view.

The delicacy and complexity of the custody decision of the court called for unusual perception and wisdom. Its determination figuratively wedged the trial court between Scylla and Charybdis. The child is of tender years. Both parents love the child and each was willing to make sacrifices for her well-being. It is abundantly clear from the memorandum of decision, however, that the court ascribed fault both for the dissolution of the marriage, and for the defendant's decision to leave this country with the child, to the plaintiff. The plaintiff imposed isolation on the defendant while she was in this country. He discouraged her from establishing any friendships and prevented her from taking formal lessons in the English language. The court, no doubt, considered these factors, which led to the breakdown of the parties' marriage, in its decision regarding custody. See General Statutes § 46b-56 (b).

Moreover, the plans for the care of the child proposed by the parties were not of equal quality. The plaintiff stated that, if awarded custody, he would arrange to have his father, who lived near the plaintiff's West Hartford home, come to his home after the plaintiff left for work and take the child to the home of a woman who has grown chil-

634

dren and resides in Farmington. At the conclusion of the plaintiff's working day, he would pick up the child and take her home. In contrast, the child's mother stated that she would, in Italy, be self-employed as a seamstress and would work in her home. She would, thus, be able to supervise and attend to the needs of the child throughout the day. The defendant's parents also reside near the defendant and would be able to assist the defendant in her care of the child. It is apparent that the defendant will have more time to devote to the raising of this child, and that the accommodations for care of the child proposed by the plaintiff would, by comparison, be less stable than those proposed by the defendant. The defendant also testified that the child would receive an education in Italy and that she would commence school at the age of six. The defendant attends church every Sunday "if possible" and usually takes the child with her.

The plaintiff also makes much of the limited extent of the defendant's formal education and the relatively insubstantial financial resources available to her. It suffices to say that a parent's role in providing the vital love, care and guidance that a child needs is almost entirely unrelated to such factors. A parent's humble origins, economic difficulties and even illiteracy are not in themselves any test of fitness for the role of custodial parent. See *People ex rel. Choolokian* v. *Mission of the Immaculate Virgin,* 192 Misc. 454, 460, 76 N.Y.S.2d 509 (1947), aff'd, 274 App. Div. 1049, 86 N.Y.S.2d 462, aff'd, 300 N.Y. 43, 88 N.E.2d 362 (1949), cert. denied, 339 U.S. 912, 70 S. Ct. 570, 94 L. Ed. 1338 (1950).

With reference to the plaintiff's emphasis on the child's probable loss of the opportunity to be raised

as an American, it is significant to note that the plaintiff has a limited understanding of the English language, and that because of the defendant's inability to speak the English language, the Italian language was spoken exclusively among family members in the home before the defendant left this country.

On the basis of all of these facts, we conclude that the trial court did not abuse its discretion by awarding custody of the child to the defendant. Although we are mindful of the benefit of American citizenship and life, with respect to the upbringing of a child and the parental functions of meeting on an ongoing basis the emotional, physical, psychological and spiritual needs of that child, the question of which parent can better fulfill that role as the custodial parent is more significant in determining the best interests of the child than the particular country in which that role will be fulfilled.

The plaintiff also claims that the award of custody to the defendant, permitting the child to reside in Italy, renders any visitation rights afforded to him illusory. Relying upon *Danielson* v. *Danielson*, 174 Conn. 427, 389 A.2d 750 (1978), he reasons that the cost of intercontinental travel is so prohibitive as to make it impracticable for him to exercise his right of reasonable visitation. There is no question but that frequent visits between the plaintiff and Lena Anne would not be feasible while the child is residing in Italy. But that fact alone is not enough to render the plaintiff's opportunity of visitation illusory. A parent's privilege of visitation of children whose custody is awarded to the other parent is not absolute, but is subordi-

nate to the best interests of the child.[10]  *Raymond v. Raymond,* 165 Conn. 735, 741, 345 A.2d 48 (1974). Generally, for the good of the child, unless a parent is completely unfit, and that is not the case here, a decree should allow the noncustodial parent to visit or communicate with the child.  *Danielson* v. *Danielson,* supra, 430; *Raymond* v. *Raymond,* supra, 741.  The trial court in this case did not deprive the defendant of his right to visit and communicate with his child either in fact or in practical effect. The cost of travel to Italy, in light of the plaintiff's income and assets, is not so prohibitive as to render his right of visitation meaningless.  Cf. *Danielson* v. *Danielson,* supra.

We conclude that the court did, however, fail to provide in its order respecting visitation the type of specificity that is essential when the frequency of visitation is, as a practical matter, drastically reduced.  The court's order simply granted to the plaintiff "the rights of reasonable visitation" of the minor child.  This order leaves the plaintiff, as well as the defendant and the child, uncertain concerning the anticipated time, length and conditions of the plaintiff's visitation with the child and whether it is to be in Connecticut or Italy.  Where the noncustodial parent's visitation with his child will be infrequent as a result of the distance that separates them, the court should, when at all possible, set specific and usually substantial periods of visita-

---

[10] There are courts that have taken the position that where the best interests of the child require that custody be granted to a nonresident parent, that determination will control even where doing so may curtail or effectively destroy the visitation rights of the noncustodial parent.  See annot., 15 A.L.R.2d 432, 445.

tion time if to do so is consistent with the child's best interests.[11] The court did not do so here and the case must be remanded for that purpose.[12]

## II

Finally, the plaintiff asserts that the trial court abused its discretion in awarding attorney's fees to the defendant in the amount of $2150 as well as the cost of preparing the transcript of the trial for the appeal.[13] General Statutes § 46b-62 provides in part that, in dissolution proceedings, "the court may order either spouse to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82." General Statutes § 46b-82, which concerns the award of alimony, requires the court to consider "the length of the marriage, the causes for the . . . dissolution of the marriage, . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 [assignment of property],

[11] In determining the best interests of the child in a case of this sort, the appointment of an attorney for the minor child; see General Statutes § 46b-54; or the ordering of an investigation and report from the Family Relations Division; see General Statutes § 46b-6; or both, would have been of great value to the trial court on the issues of custody and visitation. There is no indication that counsel for either party requested the court to take such action.

[12] It may be that in cases in which the custodial parent resides outside of this country the trial court will want to ensure the custodial parent's compliance with visitation orders by requiring the custodial parent to file a bond with the court guaranteeing such compliance. See Clark, Domestic Relations, § 17.4, p. 587; annot., 15 A.L.R.2d 432, 470 § 12. We express no opinion as to the desirability of such a procedure in this case.

[13] The cost of the transcript was estimated to be $350.

and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

The plaintiff does not challenge the validity of the fee. Indeed, he has shown his own liability for counsel fees to be in a similar amount. The parties both submitted financial affidavits, which are a part of the record on appeal. On the basis of the trial court's findings with respect to the cause of the dissolution, and the respective estates and income of the parties, we cannot say that the trial court abused its broad discretion in making the award of attorney's fees and transcript cost. See *Fricke* v. *Fricke,* 174 Conn. 602, 603–604, 392 A.2d 473 (1978). The court could reasonably have concluded as it did. See *Fucci* v. *Fucci,* 179 Conn. 174, 183, 425 A.2d 592 (1979).

There is error in part, the judgment is affirmed except as regards the plaintiff's rights of reasonable visitation and the case is remanded for a more specific determination of that issue not inconsistent with this opinion.

In this opinion the other judges concurred.