The plaintiff brought this action claiming a 6 percent real estate commission pursuant to the terms of an exclusive agency listing agreement signed by the defendant. The parties agreed that the premises described in the listing had been sold during the term of the exclusive agency. The defendant claimed, however, that the listing agreement did not contain the terms required by General Statutes 20-325a (b), and that the statute therefore precluded the institution of this action.[1]
The court found that the plaintiff was a licensed real estate broker and that the defendant was the owner of the premises known as 155-157 Boswell Avenue, Norwich, Connecticut. On April 4, 1980, the parties signed a written, exclusive sales agreement wherein the defendant appointed the plaintiff for six months as his exclusive agent to sell the Boswell Avenue property for $29,500. The plaintiff thereafter advertised the property and showed the premises to prospective buyers. On July 23, 1980, the defendant sold the property himself for $28,900. *Page 657 
At trial each party introduced his copy of the exclusive sales agreement. The agreement, on a form supplied by the multiple listing service, originally contained three bound, identical sheets of "carbonless" paper, a white original, a yellow copy and a pink copy. The paper was chemically treated so that pressure on the white original produced an impression on the yellow and pink copies.
The court found that the exclusive sales agreement, a white original produced by the plaintiff, when signed by the defendant contained the following: (a) the date of the agreement — April 4, 1980; (b) the term of the agreement — six months; (c) the sales price — $29,500; (d) the agreed commission — 6 percent; (e) the signature of the plaintiff; (f) the name and the address of the plaintiff; (g) the name and the address of the defendant. The court concluded that the agreement thus complied with the provisions of General Statutes20-325a (b).
The defendant produced the yellow, second copy of the agreement. His copy, while nearly identical, was undated, did not include the selling price and did not state the term of the agreement. It bore no indication that it had been altered. The representative from the printing company that manufactured the form in question testified that alterations to the defendant's copy could not be made without leaving some mark upon it. Because of the missing information, the yellow copy did not comply with the provisions of 20-325a (b).
The court ultimately concluded that nothing was added to the contract after the defendant received his copy and that the defendant's copy had not been altered.
The defendant argues that the court's conclusion fails to address the obvious discrepancies on the face of the conflicting documentary evidence. Since the second *Page 658 
copy could not be altered without leaving a mark, and since the original agreement contained more information than the otherwise identical second copy, the defendant argues that the only inference permissible is that the plaintiff must have added material information after the agreement was signed by the defendant and a copy given to him.
The plaintiff, however, offered an explanation as to how the white original could contain more information than the yellow copy, even at the moment it was signed. He testified that he placed a piece of hard cardboard between the first and second copies so that he could make personal notes as to things such as volume, page, map and lot number on the original without that information going through to the second and third copies. He testified that none of the blanks appearing on the yellow copy was in fact blank on the original at the time the parties signed the agreement and that the white original offered in evidence was just as it appeared at the time the parties executed it.
While reasoning minds may differ as to what the factual circumstances were here, a reviewing authority does not have the opportunity to observe the witnesses, their demeanor, comportment and the manner in which they testify. This is why such great deference is accorded the trier of fact on issues of credibility and the weight to be given conflicting testimony. Here, the court concluded that the exclusive agency listing agreement complied with the provisions of 20-325a (b) at the time of its execution. Such `a conclusion, while differing with the defendant's version, is legal, logical, does not defy reason and is consistent with the evidence offered by the plaintiff and the subordinate facts found by the court. "A conclusion of the trial court must be allowed to stand if it is reasonably supported by the relevant subordinate facts found and does not violate law, logic or reason." (Citation omitted.) Kearney v. State, 174 Conn. 244, 252, 386 A.2d 223 (1978). *Page 659 
The defendant further claims that the trial court erred in allowing the plaintiff's introduction of evidence on damages after he had rested his case. This claim is not included in the preliminary statement of issues as required by our rules of practice. See Practice Book 3012(a). The claim is therefore not properly before us and will not be considered. Presutti v. Presutti, 181 Conn. 622,626, 436 A.2d 299 (1980).
 There is no error.
In this opinion DALY, J., concurred.