******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# PRISCILLA I. CARDONA *v.* RAYMOND J. PADILLA
## (AC 46883)

Bright, C. J., and Cradle and Seeley, Js.

### *Syllabus*

The plaintiff mother appealed from the trial court's judgment granting the defendant father primary physical custody of the parties' minor child and ordering certain visitation for the plaintiff with the child. On appeal, the plaintiff claimed, inter alia, that the court abused its discretion in making its custody and visitation orders. *Held*:

This court rejected the plaintiff's claim that the trial court's shared physical custody order constituted an abuse of its discretion because the trial court failed to credit evidence demonstrating that the defendant was unwilling to facilitate the child's relationship with the plaintiff, as it was not the province of this court to reweigh the evidence or to substitute its judgment for that of the trial court.

The trial court abused its discretion by issuing an unbalanced visitation order that significantly limited the plaintiff's in-person visitation with the child because the record did not contain any findings of the court demonstrating why such a limited visitation schedule was warranted, such as a finding of complete unfitness, and the order was inconsistent with the clear intent of the statute (§ 46b-56 (b)), which requires that custody and visitation orders should provide the child with the active and consistent involvement of both parents, commensurate with their abilities and interests, and, accordingly, this court remanded the case for a new hearing on visitation.

The trial court did not abuse its discretion by issuing an order pursuant to the rule of practice (§ 25-26 (g)) requiring the parties to request leave of the court before filing a motion for modification of custody or visitation orders, the court having indicated that it did so in light of the various cases and filings between the parties, its concerns about the best interest of the child, and its observations regarding the divisive and acrimonious nature of the parties' behaviors.

Argued October 21, 2024—officially released February 4, 2025

### *Procedural History*

Application for custody of the parties' minor child, and for other relief, brought to the Superior Court in the judicial district of Danbury, where the defendant filed a cross complaint; thereafter, the matter was tried to the court, *Hon. Heidi G. Winslow*, judge trial referee;

judgment awarding the parties joint legal custody of the minor child and primary physical custody to the defendant and entering certain visitation orders, from which the plaintiff appealed to this court. *Reversed in part*; *further proceedings*.

*Olivia M. Eucalitto*, for the appellant (plaintiff).

*Opinion*

SEELEY, J. The plaintiff, Priscilla I. Cardona, appeals from the judgment of the trial court awarding the defendant, Raymond J. Padilla,[1] who lives in Florida, primary physical custody of their minor child (child) and ordering visitation for the plaintiff with the child. On appeal, the plaintiff claims that the court abused its discretion in making its custody and visitation orders and by issuing an order pursuant to Practice Book § 25-26 (g) when neither party has filed excessive motions or pleadings in this case. We agree with the plaintiff as to the court's visitation order and, accordingly, reverse the judgment of the court in part and remand the case for a new hearing on visitation.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. The parties are not married to each other and have one minor child between them, who was born in 2019. The plaintiff and the defendant originally lived together in New York with the child and the parties' other children.[2] In January, 2021, however, the defendant moved to Florida with his other children while the plaintiff remained

---

[1] The defendant did not file a brief or otherwise participate in this appeal. As a result, on July 17, 2024, this court ordered "that the appeal shall be considered on the basis of the [plaintiff's] brief and the record, as defined by Practice Book § 60-4, and oral argument, if not waived by the [plaintiff] or the court. Pursuant to Practice Book § 70-4, oral argument by the [defendant] will not be permitted."

[2] In addition to the child, the plaintiff has one son and the defendant has three sons from other relationships.

in New York with the child and her son.[3] The parties then took turns visiting each other for a time before the plaintiff, with the child and her son,[4] made an extended visit to Florida in April, 2021, and the parties again lived together with all of their children during that visit. The plaintiff planned on returning to New York at the end of that summer and believed that the defendant was going to accompany her back to New York. On August 11, 2021, however, while the parties were still in Florida, the defendant alleged that the plaintiff struck him during an argument, which resulted in the plaintiff being arrested and charged with assault and battery in Florida.[5] Later in August, 2021, the plaintiff left Florida with the child and her son and moved into her mother's house in Danbury. The parties have not been in a romantic relationship since August, 2021. Thereafter, the defendant commenced a custody action in Florida regarding the child; that case was closed, however, in June, 2023, after the court determined that Florida was not the proper venue for the matter.

In May, 2022, the plaintiff brought the action underlying this appeal and filed a custody application requesting sole legal custody and primary physical custody of the child and child support. On September 21, 2022, the defendant filed in Connecticut an application for an emergency ex parte order of custody. The court, *Figueroa Laskos*, *J.*, initially denied the defendant's application but set October 4, 2022, as the date for a

---

[3] The plaintiff did not want to move to Florida at the time because her son's father did not consent to her relocating to Florida with their son.

[4] The father of the plaintiff's son consented to the plaintiff visiting Florida with their son until the end of the summer of 2021.

[5] The plaintiff denies that she struck the defendant that day. The charges against the plaintiff ultimately were not prosecuted after she completed a deferred prosecution agreement. Regarding the 2021 incident, we note that the trial court in the present action found the plaintiff's description of the events underlying the incident to be more credible than the defendant's version of what had occurred.

hearing thereon. On September 21, 2022, the defendant also filed a cross complaint in this action seeking sole legal and physical custody of the child. Following the October 4, 2022 hearing, the court issued an interim order that, inter alia, permitted the defendant to visit with the child but did not permit him to leave the state with the child. The court also ordered the parties to return to court on November 30, 2022, for a continuation of the hearing on the defendant's application. Thereafter, following the November 30, 2022 hearing, the court issued another interim order again allowing for parenting time between the defendant and the child. Another hearing took place on December 19, 2022, after which the court issued an interim order on December 20, 2022, stating: "The minor child will remain in the care of the defendant [in Florida] until the next hearing date. The plaintiff shall return the minor child to the defendant no later than 5:30 p.m. today . . . . Caseflow shall assign a hearing date." Subsequently, on April 6, 2023, the court ultimately granted the defendant's application and awarded custody of the child to the defendant in Florida.[6]

A trial on the plaintiff's custody application and the defendant's cross complaint was held before the court, *Hon. Heidi G. Winslow*, judge trial referee, on August 16 and 17, 2023, during which the plaintiff and the defen-

---

[6] In its April 6, 2023 order, the court, *Figueroa Laskos, J.*, found "that the defendant . . . met his burden of proof to show that the minor child [was] in immediate present psychological harm." That finding was mentioned during the trial in the present matter on the plaintiff's custody application and the defendant's cross complaint before the court, *Hon. Heidi G. Winslow*, judge trial referee. When the defendant was questioned further on cross-examination about the basis for the April 6, 2023 order, the plaintiff's counsel objected, and the court sustained the objection, stating that "[t]he findings of Judge Figueroa Laskos are not in any way binding upon this court." Ultimately, following the hearing on this matter, Judge Winslow determined that the plaintiff is not "a physical danger to the child when the child is in [her] . . . care."

dant both testified.[7] At the conclusion of the trial on

---

[7] Prior to trial, the plaintiff and the defendant filed proposed orders regarding custody and visitation. In a notice of trial compliance filed by the plaintiff on August 11, 2023, the plaintiff set forth proposed orders that included, inter alia:

"1. The parties shall share joint legal custody of the minor child . . . . The minor child's primary caregivers shall be in Connecticut.

"2. The minor child shall reside with the plaintiff in Connecticut.

"3. The defendant shall have parenting time with the minor child as follows, which time may be in Florida, at the defendant's expense: (a) Martin Luther King Day weekend from Friday at 4 p.m. until Monday at 4 p.m.; (b) President's Day weekend from the last day of school at 4 p.m. until the day immediately preceding return to school at 4 p.m.; (c) in even numbered years, April vacation from the last day of school at 4 p.m. until the day immediately preceding return to school at 4 p.m.; (d) in odd numbered years, Memorial Day weekend from the last day of school at 4 p.m. until Monday at 4 p.m.; (e) Father's Day weekend from the last day of school at 4 p.m. until Sunday at 4 p.m.; (f) summer vacation from July 15th until August 15th . . . (g) Yom Kippur from the last day of school at 4 p.m. until the day immediately preceding return to school at 4 p.m.; (h) Columbus Day weekend from the last day of school at 4 p.m. until Monday at 4 p.m.; (i) in odd numbered years, Thanksgiving from the last day of school at 4 p.m. until the day immediately preceding return to school at 4 p.m.; (j) winter break from December 26th at 4 p.m. until December 30th at 4 p.m.; (k) in even numbered years, New Year's Eve, and New Year's Day, from December 30th at 4 p.m. until the day immediately preceding return to school at 4 p.m.; [and] (*l*) seventy-two hours before the commencement of the defendant's parenting time, the defendant shall provide the plaintiff with an itinerary, through AppClose, which shall include: the address at which he will be staying with the minor child and flight information, including airline, airport, flight numbers, and times and dates of departures or arrivals.

"4. In addition to the parenting time set forth in paragraph three, the defendant shall have parenting time in New York or Connecticut, at his election, on the second weekend of each month, unless otherwise agreed by the parties, in writing, from Friday at 4 p.m. until Sunday at 4 p.m.

"5. At his election, the defendant may accompany the minor child for trick-or-treating on Halloween.

"6. The defendant shall also be entitled to parenting time with the minor child on or around the minor child's birthday.

"7. The plaintiff shall have parenting time on Mother's Day weekend in all years. . . .

"9. Each parent shall be able to Skype with the minor child, while [the child] is in the care of the other parent. The parents shall endeavor to have the calls at 4 p.m. each day, or at another agreed upon time, taking into consideration the minor child's appointments and activities. The parent who has parenting time with the minor child shall: (a) provide the minor child

August 17, 2023, the court orally set forth its decision,[8] stating: "Each party blames the other for poor communications between them, and each gives, frankly, only lip service to a desire to facilitate better communications. But the court finds that both parties are responsible for the poor communications between them and that both parties have acted improperly in efforts to exclude the other parent from access to the child at different times.[9] . . . Neither parent is found . . . to be unfit in any way, except for [the] fact that they have this ongoing chest-beating going on with regard to the communications.

"That isn't to say that when I say they're not unfit that either of them is unflawed. [The plaintiff] does interrogate the child, asking the child for information about the child's father. [The defendant] hovers over the child, in essence, at every opportunity in order to give the child the impression that [the child] has to be guarded against her mother when her mother is

with a quiet indoor space to participate in the Skype call; (b) ensure that he or she has a mounted working camera; (c) place the minor child in front of the camera for the call; and (d) leave the room once the other parent appears on the call."

In his proposed orders filed August 14, 2023, the defendant requested, inter alia, the following:

"1. The parties' minor child . . . shall reside primarily with the defendant in [Florida];

"2. The parties shall have joint legal custody, with the defendant having the final say. The plaintiff shall have video contact with the child Monday, Wednesday, Friday, and Sunday at 7 p.m.;

"3. The plaintiff shall have supervised visitation with the child in [Florida] at the defendant's discretion . . . ."

[8] The court ordered a transcript of its decision to be used in the preparation of the judgment file in this case.

[9] As examples, the court referred to "when [the plaintiff] left Florida and did not disclose to [the defendant] where she was for several weeks thereafter" and how, "[d]espite [the plaintiff's] frequent communications asking for information or opportunities to see the child, [the defendant] ignores those and insists on [using a cell phone application called] AppClose as the only type of communication, knowing full well that his responses are not being received."

communicating with her by telephone, and, indeed, he intervenes when he feels that he needs to, for silly reasons, when [the plaintiff] is speaking with the child by Skype.

"So, they're both acting inappropriately and damagingly toward the child, which is very sad to see. That having been said, I don't think that either parent presents a danger to the child when the child is in his or her own care. I find, frankly, on the evidence that [the plaintiff's] description of the events . . . in [August] of 2021 [when the plaintiff was arrested is] more credible than the description of [the defendant]. And so, [the court does not] see that the parties represent any danger toward each other either. . . .

"The parties shall have joint legal custody of the child.[10] If there's no agreement after consultation on important issues involving the child, then the defendant . . . will . . . have the final word . . . during the child's normal school year. The plaintiff will have the final decision during the summer months when the child is not in school. Summer being shortly [after] getting out of school until shortly [before] returning to school.

"Now, I'm gonna call this shared physical custody because it's an interesting arrangement. The defendant will have the child with him during the school year. There are certain occasions when the child will see her mother, but . . . in general, the child will be residing in Florida. It will be her primary residence, and she will attend school there as long as at least one parent is living in Florida.

"The child will arrive in Connecticut and be delivered in Connecticut two days after the end of the . . .

---

[10] Recognizing that the plaintiff had not had a physical presence with the child for several months and that "some action ha[d] to be taken to restore [the] child to [the plaintiff's] presence," the court ordered the defendant to deliver the child to the plaintiff on September 3, 2023, with the child returning to the defendant on September 24, 2023.

school year and returned to Florida by the plaintiff two days before school starts again. I anticipate that this will mean a delivery to Connecticut sometime in the latter part of May, or the middle to late part of May, and a delivery back to Florida in the early mid-part of August each year.

"The plaintiff will also be entitled to have the child with her from December 26 until January 1 each year . . . . In addition, the [plaintiff will have the child on] the Friday before Easter until the Tuesday after Easter or, if there's no school in the week following Easter, then . . . until the Sunday after Easter. It all depends on whether there's school. I don't want to take the child out of school.

"During the time when the child is staying with the other parent, there will be regular video contact by Skype as it is now, or some other replacement that both parties may agree upon, and [those] visits will take place Monday, Wednesday, Friday, and Saturday . . . between the hours of 7:15 and 7:45 [p.m.]. The call will commence at any time during that period of time, but it will always end by 7:45 [p.m.]. Furthermore, the call will be no more than ten minutes, but it will not be the prerogative of the parent who is not on the call to cut off the call. So, even though it's only supposed to be ten minutes, it is the parent who is on the call who is the only one who may cut off the call.

"In general, with only rare exceptions, the video contact with the child will find the child indoors, unsupervised by a parent. The parent is to enclose [the child] into a room with the electronic device she needs to communicate with the other parent, will take away from [the child] all other electronic devices at the same time and will leave the room. There will be no limitation on both parents' access to service providers for the child." (Footnotes added.) The court also ordered the parties

to communicate via AppClose, a coparenting software program designed for mobile devices, and to send to the other parent a paragraph of information about the child via AppClose two times per week while the child is in that parent's custody; addressed child support and medical expenses and which travel costs will be borne by either parent; ordered that neither party is to institute a wellness checkup by the police for the child while the child is in the care of the other parent; stated that it was imposing on the parties the provisions of Practice Book § 25-26 (g), which requires a party seeking to modify parenting orders to seek permission from the court; and reserved jurisdiction for purposes of postmajority educational support. After it finished setting forth its decision, the court asked if it had overlooked anything, to which the plaintiff's counsel responded by asking the court for a clarification. The following colloquy then took place:

"[The Plaintiff's Counsel]: Are there any—is there any opportunity for my client to have parenting time—additional parenting time in Florida?

"The Court: Well, I suppose that's a two-way street, isn't it? The short answer is I am not imposing that, nor making an order regarding that. If . . . these parties grow up at some point and decide that they're gonna act like coparents of [the child], then certainly that opportunity might arise, and that applies not only to the plaintiff, but also to the defendant. The time will come when the child might have some desire to do a lot of things outside of seeing her parents, so, I'm not making any special orders, and . . . I don't make any special orders regarding holidays, birthdays, and the like, but I would expect the parties to get over their war of blaming the other party for poor communications and . . . be willing to take the first step to improve communications. I don't see this as a case where family therapy is generally going to be of help, and so, I'm not

ordering something of that sort. Further questions? . . .

"[The Plaintiff's Counsel]: Your Honor, I understand your stance on holidays and stuff. I knew that coming into . . . this case, but given the distance between the two, is there any possibility for more holiday time for [the plaintiff]? Because after September, the next time she'll see [the child] is not [until] December, and then there is a gap between—

"The Court: There are major gaps.

"[The Plaintiff's Counsel]: Yes.

"The Court: No question about it. The court feels that it's costly to be going back and forth, especially for the child to be going back and forth, and that neither of these parties has the means to do a lot of traveling, but that isn't the major consideration. The major consideration, from my point of view, is that I don't want the child to be back and forth and back and forth, frankly. I mean, the child is going to spend two and a half to three quality months in the warm weather in New England, and eight and a half to nine quality months— nine to nine and a half quality months minus a couple of weeks in Florida. That's the way it is.

"[The Plaintiff's Counsel]: Is there any opportunity for you to reconsider additional holiday time if [the plaintiff] was to pay for the flights?

"The Court: I'm not considering it. Maybe [the defendant] would see that as something useful. That's it."

This appeal followed. Additional facts and procedural history will be set forth as necessary.

Before we address the plaintiff's claims on appeal, we set forth our well established standard of review applicable to child custody and family matters. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably

conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *N. R.* v. *M. P.*, 227 Conn. App. 698, 713, 323 A.3d 1142 (2024).

"Orders regarding the custody and care of minor children . . . are governed by . . . [General Statutes] § 46b-56, which grants the court broad discretion in crafting such orders. . . . [Section] 46b-56 (a) provides in relevant part: In any controversy before the Superior Court as to the custody or care of minor children . . . the court may make . . . any proper order regarding the custody, care, education, visitation and support of the children if it has jurisdiction . . . . Subject to the provisions of section 46b-56a, the court may assign parental responsibility for raising the child to the parents jointly, or may award custody to either parent or to a third party, according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable. . . . (b) In making . . . any order as provided in subsection (a) of this section, the rights and responsibilities of both parents shall be considered and the court shall enter orders accordingly that serve the best interests of the child and provide the child with the active and consistent involvement of both parents commensurate with their abilities and interests. . . . [Section] 46b-56 (c) directs the court, when making any order regarding the custody, care, education, visitation and support of children, to consider the best interests of the child, and in doing so [the court] may consider, but shall not be limited to, one or more of [seventeen enumerated] factors[11]

---

[11] "In determining the best interests of the child, the court looks to the factors enumerated in § 46b-56 (c): '(1) The physical and emotional safety of the child; (2) the temperament and developmental needs of the child; (3) the capacity and the disposition of the parents to understand and meet the needs of the child; (4) any relevant and material information obtained from

. . . . The court is not required to assign any weight to any of the factors that it considers." (Citations omitted; footnote in original; internal quotation marks omitted.) Id., 714–15.

Our Supreme Court consistently has held that, "[i]n matters involving child custody, and, by implication, visitation rights . . . the rights, wishes and desires of the parents must be considered [but] it is nevertheless the ultimate welfare of the child [that] must control the decision of the [trial] court. . . . In making this determination, the trial court is vested with broad discretion . . . ." (Internal quotation marks omitted.) *R. H.* v. *M. H.*, 350 Conn. 432, 451, 324 A.3d 720 (2024); see also *Ridgeway* v. *Ridgeway*, 180 Conn. 533, 541, 429 A.2d 801 (1980).

Additionally, insofar as we are required to construe § 46b-56 (b), "[i]ssues of statutory interpretation consti-

the child, including the informed preferences of the child; (5) the wishes of the child's parents as to custody; (6) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (7) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (8) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (9) the ability of each parent to be actively involved in the life of the child; (10) the child's adjustment to his or her home, school and community environments; (11) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (12) the stability of the child's existing or proposed residences, or both; (13) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (14) the child's cultural background; (15) the effect on the child of the actions of an abuser, if any domestic violence, as defined in [General Statutes §] 46b-1, has occurred between the parents or between a parent and another individual or the child; (16) whether the child or a sibling of the child has been abused or neglected, as defined respectively in [General Statutes §] 46b-120; and (17) whether the party satisfactorily completed participation in a parenting education program

tute questions of law over which the court's review is plenary. The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [the court's] fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *C. D.* v. *C. D.*, 218 Conn. App. 818, 846–47, 293 A.3d 86 (2023). When a statute does not define a term, "it is appropriate to consult contemporaneous dictionary definitions. See, e.g., *Ledyard* v. *WMS Gaming, Inc.*, 338 Conn. 687, 697, 258 A.3d 1268 (2021) ('in the absence of statutory definitions, we look to the contemporaneous dictionary definitions of words to ascertain their commonly approved usage'); see also General Statutes § 1-1 (a) ('[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language')." *Cerame* v. *Lamont*, 346 Conn. 422, 428, 291 A.3d 601 (2023).

I

The plaintiff's first claim is that the court's "shared physical custody" order constitutes an abuse of its discretion. In making this claim, she points to the evidence

established pursuant to [General Statutes §] 46b-69b.' General Statutes § 46b-56 (c)." *N. R.* v. *M. P.*, supra, 227 Conn. App. 715 n.15.

demonstrating that the defendant had been unwilling to facilitate a relationship between the plaintiff and the child during the time period of December 20, 2022, until the time of trial. Specifically, she asserts that, aside from a six day period in April, 2023, when the court permitted the plaintiff to have in-person parenting time with the child, she did not see the child until September 3, 2023, when the court again ordered parenting time between the plaintiff and the child. As the plaintiff notes, "[d]uring that approximately nine month period, the defendant did not facilitate one visit between the minor child and the plaintiff." She also points to the court's finding that the defendant ignored requests from the plaintiff asking for a chance to see the child, as well as the evidence demonstrating that the defendant often interfered with her Skype calls with the child. In sum, she argues: "Whereas the evidence demonstrated that the defendant was unlikely to facilitate a relationship between the minor child and the plaintiff, the evidence also demonstrated that the plaintiff was willing to facilitate the minor child's relationship with her father."

We construe the plaintiff's claim as a claim that the court abused its discretion when making its custody determination by failing to credit certain evidence, namely, evidence demonstrating that the defendant was unwilling to facilitate a relationship between the plaintiff and the child, over other evidence it did credit in making its custody determination. According to the plaintiff, "[*g*]*iven the evidence . . . the court could not have expected* the defendant to facilitate a relationship between the plaintiff and the . . . child during the months that the child [is in the defendant's physical custody] in Florida." (Emphasis added.)

It is well established that a decision to credit "certain evidence over other evidence" is "exclusively within the province of the trial court." (Internal quotation marks omitted.) *Weaver* v. *Sena*, 199 Conn. App. 852, 860, 238

A.3d 103 (2020); see also *Woodbridge Crossing Condominium Assn.*, *Inc.* v. *Ferguson*, 229 Conn. App. 99, 104, 325 A.3d 1205 (2024) ("[i]t is the exclusive province of the trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony" (internal quotation marks omitted)); *M. C.* v. *A. W.*, 226 Conn. App. 444, 466, 319 A.3d 183 (2024) ("Insofar as the defendant invites us to reconsider the evidence that was before the court, '[w]e note that it is not the function of this court to review the evidence to determine whether a conclusion different from the one reached could have been reached. . . . Thus, [a] mere difference of opinion or judgment cannot justify our intervention.' "). "Likewise, it is not the province of this court to reweigh the evidence before the court or to substitute our judgment in this matter." *F. S.* v. *J. S.*, 223 Conn. App. 763, 794, 310 A.3d 961, cert. denied, 350 Conn. 903, 323 A.3d 344 (2024); see also *In re Blake P.*, 222 Conn. App. 693, 707, 306 A.3d 1130 (2023) ("[a]lthough there may be evidence in the record that would support the [plaintiff's] position, it is not the role of [an appellate] court to examine that evidence and substitute our judgment for that of the trial court").

We, therefore, will not substitute our judgment for that of the trial court relating to its shared custody order in this matter. Accordingly, we reject the plaintiff's first claim.

## II

The plaintiff next challenges the court's visitation order.[12] She claims that the court abused its discretion

---

[12] Although the plaintiff also noted in her appellate brief and at oral argument before this court that the trial court did not make a finding that its custody and visitation orders were in the child's best interest, her brief contains little analysis, if any, on the issue, aside from referring to § 46b-56 and the general principle therein that the court's orders must be guided by the child's best interest. The plaintiff also did not seek an articulation of the court's decision in this regard. "Absent an articulation regarding the legal basis for the trial court's decision, a claim of error cannot be predicated

by issuing an order that does not provide the child with the active and consistent involvement of both parents as required by § 46b-56 (b), as the visitation order does not provide the plaintiff with any visitation time in Florida, and, pursuant to the order, there are significant gaps in time in which the plaintiff is permitted to see her child.[13] We agree with the plaintiff and remand the case for a new hearing on visitation.[14]

on the assumption that the trial court acted erroneously." (Internal quotation marks omitted.) *Wald* v. *Cortland-Wald*, 226 Conn. App. 752, 767 n.16, 319 A.3d 769 (2024). In such circumstances, we typically presume that the court "undertook a proper analysis of the law and made whatever findings of fact were necessary." (Internal quotation marks omitted.) *Walters* v. *Servidio*, 227 Conn. App. 1, 35, 320 A.3d 1008 (2024). We take this opportunity though to remind trial judges of the importance that the record reflects a best interest finding. In a child custody case, "[t]he touchstone of any custody determination is what is in the best interest of the child. General Statutes § 46b-56 (c); *Barros* v. *Barros*, 309 Conn. 499, 517, 72 A.3d 367 (2013)." *F. S.* v. *J. S.*, supra, 223 Conn. App. 793. As § 46b-56 (c) illustrates, there are numerous factors that may be taken into consideration by the court, which need not assign weight to any particular factor. Although there are no talismanic words a court must use and courts are not limited to considering the factors set forth in § 46b-56 (c), it is essential for the record to reflect a best interest finding, both for the parents involved and so that a proper review of any order challenged on appeal can occur.

[13] The plaintiff also states in her appellate brief that the court's order interferes with her constitutional right to parent her child. Other than that bare assertion and a few citations in support thereof, however, her brief is devoid of any constitutional analysis relating to the court's decision. To the extent that the plaintiff is asserting a constitutional claim regarding the court's custody and visitation orders, any such claim is unpreserved and inadequately briefed, and we thus decline to review it. See *State* v. *Nathaniel T.*, 230 Conn. App. 45, 52–53,     A.3d     (2024) ("The defendant has not requested review of his unpreserved constitutional claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), either in name or substance. See *State* v. *Abramovich*, 229 Conn. App. 213, 218, 326 A.3d 593 (2024). The defendant has failed to provide any analysis or citation to authority [in support of his constitutional claim]. His claim, therefore, is inadequately briefed. We will not engage in *Golding* . . .  review on the basis of . . . an inadequate brief." (Internal quotation marks omitted.)). Moreover, we construe the plaintiff's claim as one that the court's visitation order is an abuse of its discretion, which is consistent with how the plaintiff's counsel characterized this claim during oral argument before this court. See *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, 113 Conn. App. 569, 580, 966 A.2d 813 ("[i]t is not the label that the plaintiff placed on each count of her complaint that is pivotal but the nature of the legal inquiry"), cert. denied, 292 Conn. 911, 973 A.2d 661 (2009).

[14] In challenging the visitation order, the plaintiff also claims that the court abused its discretion by failing to issue an order allowing visitation by the

We first must examine § 46b-56 (b). Although we exercise plenary review over issues of statutory construction; see *C. D.* v. *C. D.*, supra, 218 Conn. App. 846; ultimately, we must determine whether the court's visitation order constitutes an abuse of its discretion. See *Thomas* v. *Cleary*, 229 Conn. App. 15, 27, 326 A.3d 1109 (2024) ("[T]he authority to exercise the judicial discretion [authorized by § 46b-56] . . . is not conferred [on] this court, but [on] the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one [that] discloses a clear abuse of discretion can warrant our interference. . . . We are limited in our review to determining whether the trial court abused its broad discretion to award custody [or visitation] based upon the best interests of the child as reasonably supported by the evidence." (Internal quotation marks omitted.)); see also *N. R.* v. *M. P.*, supra, 227 Conn. App. 722 (trial court did not abuse "its wide discretion in making its custody determination and, in doing so, not applying the statutory test of [General Statutes] § 46b-56d"). With that standard of review in mind, we turn to the language of the statute.

The plaintiff asserts that, even though the court did not find that she was unfit or that she presented a physical danger to the child, "the result of the . . . court's order is that, from mid-August until late December, a period of approximately four months, the plaintiff will not see the child at all in-person. A further result is that, for a period of approximately seven months

plaintiff with the child during holidays, other than Easter, and birthdays and, instead, leaving it to the defendant's discretion as to whether any such visitation will occur. In light of our determination that the case must be remanded for an entirely new hearing on visitation, we need not address this claim.

(August until March), the plaintiff will only have parenting time with the child for a period of seven days, or approximately 3 percent of the time. Further, there is no court order that permits the plaintiff to exercise her parental rights in Florida during that seven month period, if she were so inclined to travel there. . . . While . . . § 46b-56 (b) requires the court to enter orders that provide the child with active and consistent involvement of both parents, a parent who goes four months without seeing a child and is unable to have an equal say in making decisions for the child during that time cannot be said to have an active and consistent involvement in that child's life." We agree with the plaintiff.

As § 46b-56 (b) directs, a trial court must consider "the rights and responsibilities of both parents" and "enter orders . . . that serve the best interests of the child and provide the child with the *active and consistent involvement of both parents* commensurate with their abilities and interests." (Emphasis added.) What constitutes "active and consistent involvement" is not defined by the statute, likely because it is dependent on what the court determines to be "commensurate" with the abilities and interests of the parents. General Statutes § 46b-56 (b). The word "active" is defined as "characterized by action rather than by contemplation or speculation"; Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) p. 13; and the word "consistent" is defined as "marked by harmony, regularity, or steady continuity . . . ." Id., p. 266. Thus, in its commonly understood meaning, "active and consistent" involvement means regular participation by the parent in a child's life. We recognize that, because a child custody determination is dependent on the factual circumstances of a given case, no absolute standard can apply to what constitutes "active and consistent involvement" under the statute. General Statutes § 46b-56 (b); see *R.*

*H.* v. *M. H.*, supra, 350 Conn. 451 (our Supreme Court "reaffirm[ed] that decision-making in family disputes requires flexible, individualized adjudication of the particular facts of each case without the constraint of objective guidelines" (internal quotation marks omitted)). That is because an order that serves the best interest of a child in one case and provides that child with regular involvement of both parents may not be achievable in another case in which the interests and abilities of the parents may differ. For that reason, we are mindful of the discretion afforded to trial courts in crafting an order that meets the statutory requirements. Nevertheless, we also must bear in mind that the plain language of the statute conveys a legislative intent that orders regarding custody and visitation provide the child with active and regular or steady involvement by both parents, when the circumstances permit. See General Statutes § 46b-56 (b).

In the present case, the court's visitation order significantly limits the plaintiff's in-person visitation with the child. Understandably, given the distance between Connecticut and Florida, the plaintiff, as the noncustodial parent, will not be able to play as active a role in her child's life as she would if the child lived in Connecticut. Under the court's visitation order, however, in a nine month period from mid-August to approximately mid-May, the plaintiff will have in-person visitation with the child for only twelve days: that is, from mid-August to late December she will have *no in-person contact with the child at all*, followed by seven days of visitation from December 26 to January 1; and, after January 1, she will go at least another three months with no in-person visitation until Easter, when she will have five days of visitation with the child over the Easter holiday with a potential for an additional five days being added on if there is no school the week following Easter. The plaintiff's visitation with the child resumes at some

point in the middle or end of May, when the child is to be delivered to Connecticut for an extended period of time—until mid-August—after which she must be returned to Florida.

The court's decision is devoid of any findings specifically related to the plaintiff's fitness that would suggest that the court determined that it was in the child's best interest to limit the child's visitation with the plaintiff. In fact, the court specifically found that the plaintiff was not "unfit in any way" and that neither parent posed "a physical danger to the child when the child is in his/ her own care." The court also did not make any findings regarding the plaintiff's abilities or interests in being involved with the child to support its narrow visitation order. Instead, the court specifically found that "*both* parties are responsible for the poor communications between them and that *both* parties have acted improperly in efforts to exclude the other party from access to the child at different times." (Emphasis added.) The court stated that additional visitation time might be available if both parties "grow up at some point and decide that they're gonna act like coparents of [the child] . . . ." The court then stated that its "major consideration" was that it was worried about the child going back and forth between Connecticut and Florida.[15] The court's concerns, however, do not provide a basis for its refusal to order any visitation for the plaintiff with the child *in Florida*, especially when that was specifically requested by the plaintiff's counsel and the court acknowledged that there were "major gaps" in time in which the plaintiff could visit with the child in person.

[15] In its articulation, the court elaborated further on this by stating: "An important concern of the . . . court in this case has been the need for [the child] to have some stability in her home environments. The . . . court also wished to minimize the frequency of the child's long-distance travel. The best interests of the child trump the desire of each party to gain an advantage over the other."

In *Presutti* v. *Presutti*, 181 Conn. 622, 623, 436 A.2d 299 (1980), the defendant mother, who lived in Italy, was given custody of a child, while the child's father was given the right of "reasonable visitation." On appeal, our Supreme Court determined that the award of custody to the defendant was not an abuse of discretion but, nonetheless, determined that the court's visitation order could not stand. Id., 635–37. In reaching that conclusion, the court stated: "There is no question but that frequent visits between the plaintiff and [the child] would not be feasible while the child is residing in Italy. But that fact alone is not enough to render the plaintiff's opportunity of visitation illusory. A parent's privilege of visitation of children whose custody is awarded to the other parent is not absolute, but is subordinate to the best interests of the child. . . . Generally, for the good of the child, unless a parent is completely unfit, and that is not the case here, a decree should allow the noncustodial parent to visit or communicate with the child. . . . Where the noncustodial parent's visitation with his child will be infrequent as a result of the distance that separates them, the court should, when at all possible, set specific and usually substantial periods of visitation time if to do so is consistent with the child's best interests. The court did not do so here and the case must be remanded for that purpose." (Citations omitted; footnote omitted.) Id.

Although the primary issue with the visitation order in *Presutti* was its lack of specificity; id., 636–37; which differs from the present case in which the court refused to issue any order concerning parenting time for the plaintiff in Florida, we nonetheless find guidance in the court's statements about the need for a noncustodial parent, who has not been found to be unfit, to have visitation with a child who resides some distance from the noncustodial parent and its holding that, when at all possible, the court should set specific and substantial

periods of visitation consistent with the child's best interest in such cases. In the present case, the court's visitation order sets one lengthy period of visitation for the plaintiff with the child in Connecticut, but, aside from that, there are only two additional short periods of time during which the plaintiff can see the child over the course of one year.

We conclude that the court abused its discretion by crafting a visitation order that does not provide the child with the active and consistent involvement of the plaintiff. Significantly, the record does not contain any findings of the trial court as to why the plaintiff should not play an active role in the child's life. See, e.g., *F. S.* v. *J. S.*, supra, 223 Conn. App. 782 (court found that defendant father "lack[ed] the ability to play an active and positive role in [his child's] life" (internal quotation marks omitted)). In any custody situation in which a child resides with a custodial parent out of state, visitation with the noncustodial parent will naturally involve some type of travel, either by the child or the noncustodial parent. The court's concerns about the child's travel can be alleviated through various arrangements, including, for example, having the noncustodial parent primarily bear the expense and burden of the travel. The distance and attendant burdens of traveling by the noncustodial parent, however, do not by themselves provide a basis for denying a child the active involvement in the child's life of a parent who lives out of state. Here, the court stated that it would be costly to go back and forth and that neither party has the means to do a lot of traveling, but when the plaintiff's counsel indicated that the plaintiff would be willing to have additional in-person visitation in Florida and would bear the costs of travel, the court refused to issue such an order.

Similarly, the court's expressed concerns regarding the parties' ability to effectively communicate with each

other did not justify the significant restrictions on the plaintiff's opportunities to visit with the child. The court attributed those difficulties equally to both parties. Furthermore, those challenges exist regardless of the visitation schedule given that the court's order requires ongoing coordination between the parents regarding regular communications between the noncustodial parent and the child and regular activity reports from the custodial parent to the noncustodial parent.

"[R]easonable visitation for the noncustodial parent is generally in the best interests of the child and putting distance between the child and that parent obviously will impact on those best interests." *Ireland* v. *Ireland*, 246 Conn. 413, 442, 717 A.2d 676 (1998) (*Berdon, J.*, concurring); see also *Twersky* v. *Twersky*, 103 App. Div. 2d 775, 775–76, 477 N.Y.S.2d 409 (1984) ("Visitation is a joint right of the noncustodial parent and the child . . . . The best interests of the child lie in his being nurtured and guided by both . . . parents . . . . In order for the noncustodial parent to develop a meaningful, nurturing relationship with her child, visitation must be frequent and regular . . . . Absent extraordinary circumstances, where visitation would be detrimental to the child's well-being, a noncustodial parent has a right to reasonable visitation privileges . . . ." (Citations omitted.)); *Negaard* v. *Negaard*, 642 N.W.2d 916, 921 (N.D. 2002) ("[v]isitation with a noncustodial parent promotes the child's best interests").

Further support for our determination can be found in the fact that, in addition to the visitation order not providing the opportunity for in-person visitation by the plaintiff over substantial periods of time, the order also contains no provisions for the plaintiff's visitation with the child on birthdays and holidays, other than Easter, during which time family gatherings typically take place. In that regard, the order overlooks the importance of the child's relationship with the plaintiff

and her family, including the plaintiff's son, who has a close relationship with the child, and is inimical to the development and maintenance of a healthy relationship and bond between the plaintiff and the child, who is of tender years. See, e.g., *Nikolic* v. *Ingrassia*, 47 App. Div. 3d 819, 821–22, 850 N.Y.S.2d 539 (2008) (visitation order, which awarded every weekend, holiday and summer vacation to mother, improperly failed to take into account child's relationship with father); see also *Ireland* v. *Ireland*, supra, 246 Conn. 443 (*Berdon, J.*, concurring) ("[v]isitation with the noncustodial parent is important for the development of the child"); *In re James O.*, 160 Conn. App. 506, 516, 127 A.3d 375 (2015) ("[a] child, no less than a parent, has a powerful interest in the preservation of the parent-child relationship" (internal quotation marks omitted)), aff'd, 322 Conn. 636, 142 A.3d 1147 (2016).[16]

---

[16] We also note that in *Felty* v. *Felty*, 108 App. Div. 3d 705, 706, 708–709, 969 N.Y.S.2d 557 (2013), the Appellate Division of the Supreme Court of New York addressed a custody and visitation order awarding sole physical and legal custody of twins to their mother, who lives in New York, and granting the father, who lives in Kentucky, liberal visitation rights. Specifically, the family court had "awarded the father visitation in Kentucky with the parties' children every summer and every school break for 'Thanksgiving, Christmas, winter, mid-winter, spring, and Easter' . . . [and] a 'right of first refusal' for visitation in Kentucky during four of the subject children's three-day weekend breaks from school . . . ." Id., 705. On appeal in *Felty*, the court held that the "provision of the visitation schedule which, in addition to the summer visitation, award[ed] the father visits in Kentucky during school breaks for 'every Thanksgiving, Christmas, winter, mid-winter, spring, and Easter,' effectively deprive[d] the mother 'of any significant quality time' with the children, and [was] therefore 'excessive' . . . . While that provision [took] into account the children's need to spend time with the father and his family, it [did] not take into account the importance of their relationship with the mother and her extended family, in that it deprives the children of contact 'during times usually reserved for family gatherings and recreation' . . . . [T]he court-appointed forensic evaluator recommended that the parties share parenting time during major holidays such as Thanksgiving, Christmas, and Easter. There was no contrary evidence that awarding all parenting time during these holidays to the father furthers the children's best interests." (Citations omitted.) Id., 708–709. Consequently, the Appellate Division determined that certain provisions of the visitation order were not appropriate, and it remanded the case to the family court to set forth a new visitation schedule. Id. Like in *Felty*, the visitation order in the present case fails to adequately take into account the plaintiff's role in the child's life.

Furthermore, as we have stated, in any custody situation in which the parents live in different states, the noncustodial parent's parenting time with the out-of-state child inevitably will be unbalanced to some extent. Virtual visitation can be a helpful tool in filling the gaps between in-person visitation. Indeed, in the present case, the court's order provides for regular video contact by Skype four times a week, for ten minutes each time, between the child and the plaintiff during the time period when the child is residing in Florida. Virtual visitation, however, is not a substitute for in-person visitation and cannot replace the nurturing and loving physical contact that takes place when a parent and a child interact in person.[17]

In summary, as we have stated, there is no specific formula as to what constitutes "active and consistent" involvement by a parent in a child's life. General Statutes § 46b-56 (b). Nevertheless, in the present case, the very unbalanced visitation order is not supported by any underlying factual findings[18] demonstrating why such

---

[17] See *Goldsmith* v. *Reid*, Superior Court, judicial district of Hartford, Docket No. FA-19-5060792-S (August 6, 2021) ("there is no substitute for physical contact [between a parent and a child]"); *Good* v. *Good*, Superior Court, judicial district of Fairfield, Docket No. FA-10-4032365-S (August 4, 2017) (virtual visitation can be used as supplement to provide most opportunity for noncustodial parent to continue parent-child relationship); A. LeVasseur, note, "Virtual Visitation: How Will Courts Respond to a New and Emerging Issue?," 17 Quinnipiac Prob. L.J. 362, 380–81 (2004) ("Parents and courts must realize that virtual visitation is not a substitute for actual visitation time spent face-to-face between parents and children. . . . Parents and children need to be in physical contact to maintain a healthy parent-child relationship."); see also *Gilbert* v. *Gilbert*, 730 N.W.2d 833, 840 (N.D. 2007) ("Virtual visitation includes using the telephone, Internet, web-cam, and other wireless or wired technologies to ensure the child has frequent and meaningful contact with the noncustodial parent. It is most useful in cases such as this where the child and noncustodial parent are accustomed to seeing each other on a regular basis but no longer will be able to because of the relocation. Virtual visitation is not a substitute for personal contact, but it can be a useful tool to supplement in-person visitation."); A. Schepard, "Virtual Visitation: Computer Technology Meets Child Custody Law," N.Y.L.J., Vol. 228, September 18, 2002, p. 23 ("[p]arenting plans should not be structured on the assumption that virtual visitation can substitute for personal interaction between parent and child").

[18] Even though trial courts are afforded broad discretion in crafting custody and visitation orders, there still must be a basis in the record for the court's

a limited visitation schedule is warranted, such as a finding of complete unfitness. See *Presutti* v. *Presutti*, supra, 181 Conn. 636. As the plaintiff has pointed out, between late August and Easter weekend, she is allowed visitation with the child, in person, for only seven days, or 3 percent of the time. The fact that the parties live in different states is not a sufficient basis for a noncustodial parent to be provided with such limited in-person contact with a child, especially under the circumstances here, in which the plaintiff's counsel specifically asked for more visitation time for the plaintiff *in Florida*, which would have obviated any need for the child to travel repeatedly back and forth between Connecticut and Florida. We conclude that the court's visitation order is not consistent with the clear intent of § 46b-56 (b) that child custody and visitation orders should provide the child with the regular and consistent involvement of both parents, commensurate with their abilities and interests. In light of this conclusion, we must remand the case for a new hearing on visitation.

## III

The plaintiff next claims that the court abused its discretion by including, in its final orders, an order pursuant to Practice Book § 25-26 (g) requiring the parties to request leave of the court before filing a motion for modification of custody or visitation orders.[19] She

decision. See *J. Y.* v. *M. R.*, 215 Conn. App. 648, 659, 283 A.3d 520 (2022) ("[w]e are limited in our review to determining whether the trial court abused its broad discretion to award custody based upon the best interests of the child *as reasonably supported by the evidence*" (emphasis added; internal quotation marks omitted)); see also *Hall* v. *Hall*, 186 Conn. 118, 123–24, 439 A.2d 447 (1982).

[19] Practice Book § 25-26 (g) provides in relevant part: "Upon or after entry of judgment of a dissolution of marriage, dissolution of civil union, legal separation or annulment, or upon or after entry of a judgment or final order of custody and/or visitation . . . the judicial authority may order that any further motion for modification of a final custody or visitation order shall be appended with a request for leave to file such motion and shall conform to the requirements of subsection (e) of this section. The specific factual and legal basis for the claimed modification shall be sworn to by the moving party or other person having personal knowledge of the facts recited therein. If no objection to the request has been filed by any party within ten days

argues that, because neither party in this case "filed excessive motions or pleadings" or requested the issuance of such an order, the issuance of the order constituted an abuse of discretion by the court. We disagree.

The following additional facts and procedural history are relevant to our resolution of this claim. In its decision, the court stated that it was "imposing upon the parties the provisions of Practice Book [§] 25-26 (g). This is a [provision] that requires a party seeking to modify parenting orders [to obtain] permission from the court to do so via a separate motion asking for such permission." It is undisputed that neither party requested that the court do so. On February 16, 2024, the plaintiff filed a motion for articulation, requesting an articulation as to the factual and legal basis for the order and whether the order was intended to be issued. The court granted the motion for articulation and issued a written articulation on February 28, 2024, stating in relevant part: "There is no provision of [§] 25-26 (g) that limits the . . . court's exercise of resource management to requests by the parties for such management. The . . . court is expected to act responsibly and economically in allocating judicial time and energy. . . .

"Since 2021, the parties have treated their child as the rope in a tug-of-war, such that the child has been back and forth among numerous residences in New York, Connecticut and Florida. The [child] . . . was born [in] March [of] 2019. At the time of this trial in August, 2023, [she] was four years of age. Her parents

of the date of service of such request on the other party, the request for leave may be determined by the judicial authority with or without hearing. If an objection is filed, the request shall be placed on the next short calendar, unless the judicial authority otherwise directs. At such hearing, the moving party must demonstrate probable cause that grounds exist for the motion to be granted. If the judicial authority grants the request for leave, at any time during the pendency of such a motion to modify, the judicial authority may determine whether discovery or a study or evaluation pursuant to Section 25-60 shall be permitted."

had spent an unusual amount of time in court. They had a previous custody case with temporary orders in Florida and a restraining order case in Florida. These were separate from the domestic disturbance criminal case prosecuted by [the state of] Florida against the plaintiff. All those cases ended in dismissal. The custody action in Connecticut commenced [in] May [of] 2022. While it has been pending, each party has filed an ex parte application for emergency custody orders. The plaintiff has also filed a separate custody modification motion in December, 2022, and another such motion in April, 2023, less than three weeks after the entry of a pendente lite parenting order. The parties filed a total of four motions for contempt pendente lite. In addition to resolution plan dates, discovery issues, and status conferences, Judge Figueroa Laskos presided over a multiday hearing on . . . dates from December 19, 2022, to April 6, 2023.

"The clerk's office in Danbury treated as a pleading the plaintiff's letter of August 22, 2022, addressed to Judge Winslow. The letter . . . seems to be an objection to a continuance request by the defendant. Although the plaintiff's letter accuses the defendant of not being satisfied until he gets sole custody of the minor child, the message received by the . . . court from both parties' behaviors throughout the case has been that neither party will be satisfied with anything less than total victory.

"With any postjudgment motion to modify final custody orders, the . . . court must first consider what circumstances have changed to warrant a parenting plan modification. A request for leave to file a motion to modify allows the . . . court to undertake that first consideration early in the context of a probable cause analysis. . . .

"An important concern of the . . . court in this case has been the need for [the child] to have some stability

in her home environments. The . . . court also wished to minimize the frequency of the child's long-distance travel. The best interests of the child trump the desire of each party to gain an advantage over the other. Determining probable cause before allowing a hearing on a motion to modify the parenting plan is a feasible way to protect the child from unnecessary turmoil. The discretion of the . . . court to impose filing restrictions is not limited to cases with circumstances deemed to be extreme and compelling. . . . The . . . court did intend to enter the order imposing the provisions of Practice Book § 25-26 (g)." (Citations omitted.)

We now turn to the legal principles that govern our resolution of this claim. Whether the court acted improperly by including the Practice Book § 25-26 (g) order in its final orders is governed by an abuse of discretion standard. See *J. Y.* v. *M. R.*, 215 Conn. App. 648, 671, 283 A.3d 520 (2022). Moreover, "matters involving judicial economy, docket management [and control of] courtroom proceedings . . . are particularly within the province of a trial court." (Internal quotation marks omitted.) *F. S.* v. *J. S.*, supra, 223 Conn. App. 791. "An appellant who seeks to reverse the trial court's exercise of judicial discretion assumes a heavy burden." (Internal quotation marks omitted.) *J. Y.* v. *M. R.*, supra, 672.

Recently, in *J. Y.* v. *M. R.*, supra, 215 Conn. App. 670, this court rejected a similar claim—that the trial court abused its discretion by including a Practice Book § 25-26 (g) order in its final orders because such orders "may be issued in extreme, compelling situation[s] only . . . ." (Internal quotation marks omitted.) Id., 670–71. In that case, we concluded that our case law could not be construed "as curbing a court's decision to impose filing restrictions by limiting such orders to cases with circumstances deemed to be extreme and compelling," or as holding "that orders imposing filing restrictions

are reserved for such cases." Id., 671; see also *F. S.* v. *J. S.*, supra, 223 Conn. App. 797 ("[t]here is nothing . . . curtailing a trial court's exercise of its considerable discretion over its docket or expressly barring" order prohibiting parties from filing motions or pleadings without court approval). Notwithstanding this court's conclusion that such orders are not limited to "circumstances deemed to be extreme and compelling"; *J. Y.* v. *M. R.*, supra, 671; in explaining why the trial court's issuance of the order did not constitute a clear abuse of its discretion, this court noted that the parties began filing " '[a] slew of . . . motions' " concerning their child less than one year following the judgment and that the minor child's guardian ad litem had testified in favor of the court issuing such an order "in light of the length of the litigation, the financial and emotional toll of the litigation on the parties, and the guardian ad litem's belief that the child was 'not unscathed by the distress that [the parties] ha[d] gone through.' " Id., 672; see also *F. S.* v. *J. S.*, supra, 797–98 (after referring to issuance of such order in *Strobel* v. *Strobel*, 92 Conn. App. 662, 665, 886 A.2d 865 (2005), as constituting "a praiseworthy attempt by the trial judge to limit the parties' barrages of repetitive and abusive motions," this court noted that "[t]he record in the present case reflects no less of a compelling reason for an order attempting to curtail the flood of repetitive and oftentimes frivolous motions filed in this matter" (internal quotation marks omitted)). Therefore, even though a court's decision to impose filing restrictions is not limited to circumstances deemed to be extreme and compelling, our case law suggests that such orders are appropriate in circumstances in which the parties have filed repetitive or even frivolous motions or pleadings that have unnecessarily prolonged the proceedings.

In the present case, given the basis for the court's issuance of the Practice Book § 25-26 (g) order, as

explained in its articulation, we find no clear abuse of discretion by the court in its inclusion of the § 25-26 (g) order in its final orders. See *N. R.* v. *M. P.*, supra, 227 Conn. App. 716 ("[n]othing short of a conviction that the action of the trial court is one [that] discloses a clear abuse of discretion can warrant our interference" (internal quotation marks omitted)). In its articulation, the court first properly noted that "[t]here is no provision [in §] 25-26 (g) that limits the trial court's exercise of resource management to requests by the parties for such management." It also stated that the parties "have treated their child as the rope in a tug-of-war" and that they have "spent an unusual amount of time in court." The court then proceeded to set out the various cases and filings of the parties, which included a prior custody case in Florida, a domestic disturbance criminal case in Florida, ex parte applications for emergency custody orders in the present case, motions for modifications, one of which was filed just three weeks following the issuance of a pendente lite parenting order, as well as motions for contempt, and a separate multiday hearing that was held on divers dates between October, 2022, and April, 2023.

Additionally, in its articulation, the court examined the docket and explained that it viewed the inclusion of the Practice Book § 25-26 (g) order as an effective screening tool that would allow it to assess whether the parties' circumstances have changed in the event a motion to modify is filed, for purposes of deciding whether the moving party should be heard. The court elucidated further that the § 25-26 (g) order was also intended to protect the child "from unnecessary turmoil" by allowing the court to make a probable cause determination "before allowing a hearing on a motion to modify . . . ." Such considerations are well within the court's discretion, especially given the court's concerns about the best interest of the child, as well as its

observation of the divisive and acrimonious nature of the parties' behaviors, which led the court to believe that "neither party will be satisfied with anything less than total victory." Accordingly, the plaintiff has not demonstrated that the court abused its discretion by including a § 25-26 (g) order in its final orders.[20]

The judgment is reversed with respect to the visitation order and the case is remanded for a new hearing on visitation; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[20] Although the court's articulation established a sufficiently particularized basis for issuing the Practice Book § 25-26 (g) order in this case, we caution that our holding should not be interpreted as endorsing the issuance of such orders in every contested dissolution proceeding. Rather, our holding in this case stands only for the proposition that the court's issuance of a § 25-26 (g) order here did not constitute an abuse of discretion because it provided sufficient case specific reasoning for doing so. In other words, a court's issuance of a § 25-26 (g) order based on only generalized reasoning that is not case specific, or on no reasoning at all, may well constitute an abuse of its discretion. Consequently, the plaintiff's argument that applying the logic of the trial court would mean that a Practice Book § 25-26 (g) order "should be implemented in every contested custody matter" is unfounded.